Mr. Justice Milleb,
delivered the opinion of the court:
The facts found by the Court of Claims in this case show that, under the original contract between plaintiff and the United States, the plaintiff had delivered part of the 200,000 bushels of oats which he had agreed to deliver and had tendered the remainder, and that the quartermaster to whom they were properly tendered had refused to receive them. If plaintiff suffered any loss by that refusal, he is entitled to recover for it in this action. But the only items of his account which refer to this part of the transaction were allowed to him by the court, except the claim of $400 damages for failure to accept the oats, and there is no evidence that he lost anything by this refusal. On the contrary, it appears that oats had risen in the market above the contract price, so that the presumption is that he was benefited instead of injured by the refusal of the officer to accept the oats when offered.
But after all this had passed, and the time for delivering the oats had expired, the quartermaster in charge of the matter demanded of plaintiff that he should still furnish the quantity of oats necessary, with what had been received, to complete the 200,000 bushels at the price stipulated in the original agreement. Plaintiff objected to this at first, but finally yielded and delivered the remainder of the oats.
*107 Not content, however, with the price fixed by the contract, he now claims that oats had advanced in the market, and were worth atthetime of this latter delivery and 12 cents per bushel more than that price, and for the amount of this difference, with some other matters, he asks judgment.
It is very clear that but one contract was ever made in this case, and that plaintiff was absolved from this by the refusal of the quartermaster to receive the oats when tendered. But, from whatever motive he may afterward have consented to renew that agreement and proceed to its fulfillment, its terms were the same. If such pressure was brought to bear on him as would make the renewal of the contract void, as being obtained by duress, then there was no contract, and the proceeding was a tort, for which the officer may have been personally liable. If plaintiff’s consent was voluntary, then the contract to which he assented was binding, and must control the case. The quartermaster treated the contract as still in force, and his demand on plaintiff was made under that idea. In this he was wrong. But plaintiff had his option to concur in this view and deliver the balance of the oats, or to refuse to deliver any more.
Though the Court of Claims finds that plaintiff, when he consented to deliver, had gone to that officer’s quarters in company with an orderly, which he considered as an arrest, the court does not find an arrest, nor the use of any force against his person. Nor does the petition of plaintiff say anything about an arrest, or force, or duress. That he feared the officer might buy the oats in the market and hold back the difference in price from the money due for oats already delivered, does not invalidate the contract which he consented to fulfill to avoid that result. He could still have refused, and the Government would have paid him what it owed him.
The supposition that the Government will not pay its debts, or will not do justice, is not to be indulged. Still less can it be-made the foundation for a claim of indemnity against loss incurred by an individual by acting on such a suggestion.
But it is not to be disguised that this case is an attempt, under the assumption of an implied contract, to make the Government responsible for the unauthorized acts of its officers, those acts being in themselves torts. No government has ever *108 held itself liable to individuals for the misfeasance, laches, or unauthorized exercise of power by its officers and agents.
In the language of Judge Story, (Story on Agencies, § 319,) u It does not undertake to guarantee to any person the fidelity of any of the officers or agents whom it employs, since that would involve it in all its operations in endless embarrassments and difficulties and losses, which would be subversive of the public interests.” (United States v. Kilpatrick, 9 Wheaton, 720; Dox v. Postmaster-General, 1 Peters, 318; Conwell v. Voorhees, 13 Ohio, 523.)
The creation by act of Congress of a court in which the United States may be sued, presents a novel feature in our jurisprudence, though the act limits such suits to claims founded on contracts, expressed or implied, with certain unimportant exceptions. But in the exercise of this unaccustomed jurisdiction the courts are embarrassed by the necessary absence of precedent and settled principles by which the liability of the Government may be determined. In a few adjudged cases where the United States was plaintiff, the defendants have been permitted to assert demands of various kinds byway of set-off, and these cases may afford useful guidance where they are in point. The cases of United States v. Kilpatrick, (9 Wheaton 720,) and Dox v. The Postmaster-General, (1 Peters, 318,) above cited, are of this class, and establish the principle that even in regard to matters connected with the cause of action relied on by the United States, the Government is not responsible for the laches, however gross, of its officers.
The language of the statutes which confer jurisdiction upon the Court of Claims, excludes by the strongest implication demands against the Government founded on torts. The general principle which we have already stated as applicable to all governments, forbids, on a policy imposed by necessity, that they should hold themselves liable for unauthorized wrongs inflicted by their officers on the citizen, though occurring while engaged in the discharge of official duties. (Nicol v. United States, 7 Wallace, 122.)
In the absence of adjudged cases determining how far the Government may be responsible on an implied assumpsit for acts which, though unauthorized, may have been done in its interest, and of which it may have received the benefit, the apparent hardships of many such cases present strong appeals to *109 the courts to indemnify the suffering individual at the expense of the United States.
These reflections admonish us to be cautious that we do not permit the decisions of this court to become authority for the righting in the Court of Claims of all wrongs done to individuals by the officers of' the General Government, though they may have been committed while serving that Government, and in the belief that it was for its interest. In such cases where it is proper for the nation to furnish a remedy, Congress has wisely reserved the matter for its own determination. It certainly has not conferred it on the Court of Claims.
Judgment abpibMed.