[Richardson, Ch. J.,
delivered the opinion of the court.
The defendants have filed a general demurrer to the petition above set out in full, and we must look to the latter for all the facts in the case.
It is not easy to determine whether the suit is in law or in equity. If it be an action at law, then it is founded on an implied promise springing from that profusion of the Constitution which declares that “private property shall not be taken for public use without just compensation.” Of such an action the court now has jurisdiction on the voluntary petition of the claimant, under the act of March 3,1887, Chap. 359 (1 Supplement to R. S., 2d ed., p. 559), as it had previously in cases transmitted by the heads of Departments under Revised Statutes, section 10G3.
The facts set out in the petition negative any taking by right of eminent domain, although there is an incidental allegation that “ the United States, in virtue of its power of eminent domain, entered into possession of the land aforesaid and every part thereof, and still hold and occupy the same.” This allegation is qualified and explained by other facts presented in detail.
Congress made the following appropriation:
“For purchase of land for proving and ranging ground for naval guns, and for constructing buildings, butts, shelters, and batteries, forty thousand dollars.” (Act of 1887, March 3, 24 Stat., 582.)
Duly authorized officers of the Government therefore proceeded to purchase the land in question of one Benjamin Cooley “ for the ridiculously inadequate price of $2,500,” as alleged, and took a deed to the United States under which they entered into possession, and the same is now held by defendants claiming title by purchase.
*83 In Langford’s Case (101 U. S., 341) tbe Supreme Court beld tbat where tbe United States, by their officers, take possession of real estate under claim of title tbe Government is not liable to tbe real owner for use and occupation. Tbe question was left open and undecided whether or not this court has jurisdic- • tion of claims for tbe value of real estate taken by right of eminent domain even where “tbe Government admits tbe title of tbe individual and bis right to compensation.” Tbe case clearly intimates, however, tbat unless tbe title of tbe claimant is admitted no promise can be implied upon which an action will lie in this court.
Here tbe defendants’ officers evidently supposed they were dealing with an owner who bad a right to convey tbe land and acquired a perfect title. They did not intend to enter upon tbe estate by right of eminent domain even if they bad a right to do so under tbe act which made an appropriation only for the purchase of land. Perhaps under tbe broad language of tbe condemnation act of 1888, August 1, chapter 728 (1 Supplement to Rev. Stat., 2d ed., p. 601), tbe defendants might have acquired title by condemnation; but they did not do so and never attempted it.
No absolute necessity is disclosed that this particular land should be taken for tbe purpose designated in tbe act, and bad the officers not been able to purchase at a low price they might have proceeded to tbe condemnation or purchase of some other land.
In order to sustain this action as a suit at law we should have to bold the deed from Cooley to be absolutely void, tbat tbe defendants took no title whatever under it, and tbat they bold tbe property on an implied assumpsit to pay the legal owner its full value. This would be contrary to tbe facts alleged. Whether Cooley beld title as mortgagee or as trustee, be bad a certain interest in tbe land. Tbat interest is declared in bis agreement with tbe Jacksons, tbe equitable owners. After reciting tbat Cooley was to pay a certain mortgaged debt thereon, etc., tbe instrument provides tbat—
“ For moneys so advanced by said Cooley and paid out, and all tbe expenses and trouble be may be at touching tbe same, tbe land shall be liable to him and be security in his bands to reimburse him fully, and be may sell and convey tbe land when be may be so advised in writing by tbe said counsel, *84 and, after paying himself, shall take to himself one-fourtli of the proceeds resulting from the same, and the other three-fourths shall be equally divided between Jackson and his wife and the said counsel according to their agreement.
“And if at any time said counsel, so retained by said Jackson and his wife, shall find a purchaser for the said land, the said Benjamin Cooley shall execute a deed therefor and the proceeds of said sale shall be divided in pursuance of this agreement.”
The interest of Cooley, whatever it might be, was certainly conveyed to the defendants subject to the rights of the claimants as equitable owners, of whose rights the defendants were notified before purchase. As between individuals a court of equity might set aside the conveyance of Cooley as in fraud of the claimants, or, as the latter offer to ratify the sale upon payment of the value of the land, after the reimbursement of Cooley for the sum due him by the agreement, a court of equity might compel an accounting among all the parties and make a decree accordingly, and that is one view which may be taken of the case.
Treating the petition as a bill in equity, we are met with objections to our jurisdiction on the grounds—
First, that the court has jurisdiction in equity only to render a money judgment, as decided in Jones’s Case (131 U. S., 1).
Second, that such a case would involve the necessity of making Cooley a party to the suit, and of entering a decree which would be binding upon him. The very organization of the court forbids this. It was established to investigate claims against the United States, and Congress has never extended its jurisdiction to suits against individuals. Cooley is not a party'in the case. He could not be made so, and if he should come in voluntarily on notice the court would have no jurisdiction to make a decree to which it could compel him to submit.
Parts of the petition contain allegations sounding in tort, actions for which are expressly excluded from the jurisdiction of this court by the act of March 3,1887, above cited.
After reciting pending negotiations between the officers of the Government and one Mrs. Taylor as to the purchase and sale of her land adjoining to that for which the claimants are now seeking to obtain compensation, the petitioners make the allegations that said Cooley entered into negotiations for the sale of their land, “intending to deceive these claimants,” and *85 that he conveyed the same to the United States “in fraud of these claimants,” after notice of their rights to the defendants’ purchasing officers.
The claimants’ petition sets out facts which indicate great wrongs done to them, and for which they would have a remedy in a court of equity if the United States were not concerned. But the G-overnment is not responsible for the torts of its officers. In Gibbons’s Case (8 Wallace, 269, and 7 C. Cls. R., 105, 109) quoted and reaffirmed in Langsford’s Case, above cited, the Supreme Court, after considering the general principles applicable to all governments in such transactions and the limited jurisdiction of this court, says:
“These reflections admonish us to be cautious that we do not permit the decision of this court to become authority for righting in the Court of Claims all wrongs done to individuals by the officers of the General Government, though they have been committed while serving the Government and in the belief that it was for its interest. In such cases, where it is proper for the nation to furnish a remedy, Congress has wisely reserved the matter for its own determination.”
In every view we can take of this case the demurrer must be sustained, and judgment for the defendants will be entered thereon dismissing the petition, unless on. or before the first Monday in February next the claimants elect to amend the same.