Campbell, Ghief Justice,
delivered the opinion of the court:
The question is upon the demurrer filed to the petition. In the caption the case is styled a suit against the United States of America and Speedway Park Association, a corporation. We treat this as a mere inadvertence, the sole defendant being the United States, so far as this court can give it consideration. See Jackson's case, 27 C. Cls. 74.
The petition is filed by two persons alleging themselves to be the holders of 775 shares of the capital stock of the Speedway Park Association, a corporation organized under the laws of the State of Illinois, with a capital stock of $1,000,000, represented by 100,000 shares of the par value of $10 each. It, therefore, purports to be a suit by minority stockholders. Its averments are prolix and confused, but we glean from them that the Speedway Park Association was the owner of 320 acres of land that had been improved to accommodate automobile racing and was in operation *389 from June, 1915, to December 29, 1917. It had issued 23,375 shares of its stock to 470 stockholders. That in April, 1915, one George H. 'Shank, who is alleged to be the representative of what the petition calls the “ Hines-Shank combination,” addressed a proposal to the corporation, made Exhibit A to the petition, wherein he proposed to build and construct a track for an automobile speedway, according to designated plans and subject to definite provisions, for the consideration of 51,000 shares of the corporation’s capital stock and notes of the association for the full amount of the cost of constructing the track and appurtenances. This proposal was duly accepted by the association. These improvements, it is averred, were completed and the association was doing business “ under Hines-Shank management until Decmber 29, 1917, when it was put out of business by Hines-Shank appropriating this property to themselves.” This is followed by the averment that on December 29, 1917, the Speedway Park Association conveyed said land by quitclaim deed to one Thomas for the secret benefit of the so-called Hines-Shank combination, “ without any consideration” upon their own valuation of $1,623,512. It is averred that on May 14,1919, one of the plaintiffs, William Leather, began a suit in the Circuit Court of Cook County, Ill., against a number of persons, including Thomas and Hines and Shank, to recover the land obtained from the association, by the conveyance mentioned. The result of that suit is not stated, but the petition contains averments relative to the injury done to the property by destruction of the racetrack improvements and the use of the salvage from these improvements in the hospital building being constructed, which was subsequently acquired by the Unitéd States. These averments are very much like those mentioned in the opinion in the case of Leather et al. v. White, 296 Fed. 477, decided February 7, 1924. It appears that a hospital was erected on the land under contract, that the Secretary of the Treasury was authorized to acquire the property for the. Government, and that it was conveyed to the United States. The authority to purchase was given by acts of Congress. (See 40 Stat. 1304; 41 Stat. 45, 378, 508, 1163.) Proceeding upon the idea that the majority stockholders and officers of *390 the corporation acting for them and under their direction committed frauds upon the rights of the corporation and the minority stockholders, the petition seeks to recover from the Government the value of the property that has been conveyed to the United States, the plaintiffs thus claiming a right to recover for the benefit of the corporation and all of the stockholders. It is not questioned that the United States has paid for the property, has received a conveyance, and is in possession and enjoyment of it, holding the legal title, but it is alleged that this conveyance was taken with notice of the pendency of the suit in the State court to set aside the transaction brought about by the “ Hines-Shank combination.” The theory of the plaintiffs deduced from the petition and brief is that the Government has taken property of theirs and should be made to pay for it because of the fifth amendment. This theory can not be maintained when the United States is in possession of the property, claiming it as its own. See Tempel case, 248 U. S. 121. Where property is taken in accordance with an express contract for its purchase, there can not be an implication that it was taken under the right of eminent domain so as to make the Government liable as upon an implied contract. See Klebe case, 57 C. Cls. 160; 263 U. S. 188. While the jurisdictional act (sec. 145, Judicial Code) confers certain equity powers on the Court of Claims, its jurisdiction in that regard is limited. See Jones case, 131 U. S. 1, 16; Bonner case, 9 Wall. 156, 159; Jackson’s case, 27 C. Cls. 74, 83. It may reform contracts when necessary to render appropriate judgments. See Milliken Imprinting Co. case, 202 U. S. 168. But it has no such jurisdiction as would enable it to adjudicate the rights of stockholders in a suit by minority stockholders on behalf of themselves or the corporation, alleging fraudulent practices by the majority stockholders or corporate officers to the injury of the minority and seeking for that cause to impeach or defeat a conveyance to the United States. See Jackson’s case, supra.
The petition should be dismissed. And it is so ordered.
Graham, Judge; Hat, Judge; DoavNEY, Judge; and Booth, Judge, concur.