# FINLEY v. UNITED STATES

No. 87–1973.   Argued February 28, 1989—Decided May 22, 1989

SCALIA, J., delivered the opinion of the Court, in which REHNQUIST, C. J., and WHITE, O'CONNOR, and KENNEDY, JJ., joined. BLACKMUN, J., filed a dissenting opinion, *post*, p. 556. STEVENS, J., filed a dissenting opinion, in which BRENNAN and MARSHALL, JJ., joined, *post*, p. 558.

*Joseph T. Cook* argued the cause for petitioner. With him on the briefs was *Juanita M. Madole.*

*Deputy Solicitor General Shapiro* argued the cause for the United States. With him on the brief were *Solicitor General Fried, Assistant Attorney General Bolton, Richard G. Taranto, John F. Cordes,* and *Thomas M. Bondy.*

JUSTICE SCALIA delivered the opinion of the Court.

On the night of November 11, 1983, a twin-engine plane carrying petitioner's husband and two of her children struck electric transmission lines during its approach to a San Diego, California, airfield. No one survived the resulting crash. Petitioner brought a tort action in state court, claiming that San Diego Gas and Electric Company had negligently positioned and inadequately illuminated the transmission lines, and that the city of San Diego's negligent maintenance of the airport's runway lights had rendered them inoperative the night of the crash. When she later discovered that the Federal Aviation Administration (FAA) was in fact the party responsible for the runway lights, petitioner filed the present action against the United States in the United States District Court for the Southern District of California. The complaint based jurisdiction upon the Federal Tort Claims Act (FTCA), 28 U. S. C. § 1346(b), alleging negligence in the FAA's operation and maintenance of the runway lights and performance of air traffic control functions. Almost a year later, she moved to amend the federal complaint to include claims against the original state-court defendants, as to which no independent basis for federal jurisdiction existed. The District Court

granted petitioner's motion and asserted "pendent" jurisdiction under *Mine Workers* v. *Gibbs*, 383 U. S. 715 (1966), finding it "clear" that "judicial economy and efficiency" favored trying the actions together, and concluding that they arose "from a common nucleus of operative facts." App. to Pet. for Cert. A–8 to A–9. The District Court certified an interlocutory appeal to the Court of Appeals for the Ninth Circuit under 28 U. S. C. § 1292(b). That court summarily reversed on the basis of its earlier opinion in *Ayala* v. *United States*, 550 F. 2d 1196 (1977), cert. dism'd, 435 U. S. 982 (1978), which had categorically rejected pendent-party jurisdiction under the FTCA. We granted certiorari, 488 U. S. 815 (1988), to resolve a split among the Circuits on whether the FTCA permits an assertion of pendent jurisdiction over additional parties. Compare, *e. g.*, *Ayala* v. *United States, supra*, with *Lykins* v. *Pointer, Inc.*, 725 F. 2d 645 (CA11 1984), and *Stewart* v. *United States*, 716 F. 2d 755 (CA10 1982), cert. denied, 469 U. S. 1018 (1984).

The FTCA provides that "the district courts . . . shall have exclusive jurisdiction of civil actions on claims against the United States" for certain torts of federal employees acting within the scope of their employment. 28 U. S. C. § 1346(b). Petitioner seeks to append her claims against the city and the utility to her FTCA action against the United States, even though this would require the District Court to extend its authority to additional parties for whom an independent jurisdictional base—such as diversity of citizenship, 28 U. S. C. § 1332(a)(1)—is lacking.

In 1807 Chief Justice Marshall wrote for the Court that "courts which are created by written law, and whose jurisdiction is defined by written law, cannot transcend that jurisdiction. It is unnecessary to state the reasoning on which this opinion is founded, because it has been repeatedly given by this court; and with the decisions heretofore rendered on this point, no member of the bench has, even for an instant, been dissatisfied." *Ex parte Bollman*, 4 Cranch 75, 93 (1807). It

remains rudimentary law that "[a]s regards all courts of the United States inferior to this tribunal, two things are necessary to create jurisdiction, whether original or appellate. The Constitution must have given to the court the capacity to take it, *and an act of Congress must have supplied it. . . .* To the extent that such action is not taken, the power lies dormant." *The Mayor* v. *Cooper*, 6 Wall. 247, 252 (1868) (emphasis added); accord, *Christianson* v. *Colt Industries Operating Co.*, 486 U. S. 800, 818 (1988); *Firestone Tire & Rubber Co.* v. *Risjord*, 449 U. S. 368, 379–380 (1981); *Kline* v. *Burke Construction Co.*, 260 U. S. 226, 233–234 (1922); *Case of the Sewing Machine Companies*, 18 Wall. 553, 577–578, 586–587 (1874); *Sheldon* v. *Sill*, 8 How. 441, 449 (1850); *Cary* v. *Curtis*, 3 How. 236, 245 (1845); *McIntire* v. *Wood*, 7 Cranch 504, 506 (1813).

Despite this principle, in a line of cases by now no less well established we have held, without specific examination of jurisdictional statutes, that federal courts have "pendent" claim jurisdiction—that is, jurisdiction over nonfederal claims between parties litigating other matters properly before the court—to the full extent permitted by the Constitution. *Mine Workers* v. *Gibbs, supra; Hurn* v. *Oursler*, 289 U. S. 238 (1933); *Siler* v. *Louisville & Nashville R. Co.*, 213 U. S. 175 (1909).[1] *Gibbs*, which has come to stand for the principle in question, held that "[p]endent jurisdiction, in the sense of judicial *power*, exists whenever there is a claim 'arising under [the] Constitution, the Laws of the United States, and Treaties made, or which shall be made, under their Authority . . . ,' U. S. Const., Art. III, § 2, and the relationship

---

[1] JUSTICE STEVENS apparently does not acknowledge the divergence in these lines of authority. Nothing else can explain the belief expressed in his dissent that there is force in the argument that "[i]f the Court's demonstration [of lack of statutory authority] were controlling, *Gibbs, Hurn*, and *Moore*, as well as a good many other cases, were incorrectly decided." *Post*, at 572. For that is entirely canceled by the equally valid argument that, if lack of statutory authority were *not* controlling, *Christianson, Firestone, Sewing Machine Companies*, and *McIntire*, as well as a good many other cases, were incorrectly decided.

between that claim and the state claim permits the conclusion that the entire action before the court comprises but one constitutional 'case.'" 383 U. S., at 725 (emphasis in original). The requisite relationship exists, *Gibbs* said, when the federal and nonfederal claims "derive from a common nucleus of operative fact" and are such that a plaintiff "would ordinarily be expected to try them in one judicial proceeding." *Ibid.* Petitioner contends that the same criterion applies here, leading to the result that her state-law claims against San Diego Gas and Electric Company and the city of San Diego may be heard in conjunction with her FTCA action against the United States.

Analytically, petitioner's case is fundamentally different from *Gibbs* in that it brings into question what has become known as pendent-*party* jurisdiction, that is, jurisdiction over parties not named in any claim that is independently cognizable by the federal court.[2] We may assume, without deciding, that the constitutional criterion for pendent-party jurisdiction is analogous to the constitutional criterion for pendent-claim jurisdiction, and that petitioner's state-law claims pass that test. Our cases show, however, that with respect to the addition of parties, as opposed to the addition of only claims, we will not assume that the full constitutional power has been congressionally authorized, and will not read jurisdictional statutes broadly. In *Zahn* v. *International Paper Co.*, 414 U. S. 291, 301 (1973), we refused to allow a plaintiff pursuing a diversity action worth less than the jurisdictional minimum of $10,000 to append his claim to the jurisdictionally adequate diversity claims of other members of a plaintiff class—even though all of the *claims* would together

---

[2] JUSTICE STEVENS is thus mistaken to rely upon, *post*, at 559–560, n. 6, this Court's decision in *Moore* v. *New York Cotton Exchange*, 270 U. S. 593 (1926). That case involved jurisdiction over a counterclaim brought by and against parties who were already properly before the court on other, federal-question grounds. His dissent generally ignores this distinction—a central distinction, as we shall later discuss—between new parties and parties already before the court.

have amounted to a single "case" under *Gibbs*, see *Owen Equipment & Erection Co.* v. *Kroger*, 437 U. S. 365, 372 (1978). We based this holding upon "the statutes defining the jurisdiction of the District Court," 414 U. S., at 292, and did not so much as mention *Gibbs*.

Two years later, the nontransferability of *Gibbs* to pendent-party claims was made explicit. In *Aldinger* v. *Howard*, 427 U. S. 1 (1976), the plaintiff brought federal claims under 42 U. S. C. § 1983 against individual defendants, and sought to append to them a related state claim against Spokane County, Washington. (A federal § 1983 claim was unavailable against the county because of this Court's decision in *Monroe* v. *Pape*, 365 U. S. 167 (1961).)[3] We specifically disapproved application of the *Gibbs* mode of analysis, finding a "significant legal difference." 427 U. S., at 15. "[T]he addition of a completely new party," we said, "would run counter to the well-established principle that federal courts . . . are courts of limited jurisdiction marked out by Congress." *Ibid.* "Resolution of a claim of pendent-party jurisdiction . . . calls for careful attention to the relevant statutory language." *Id.*, at 17. We held in *Aldinger* that the jurisdictional statute under which suit was brought, 28 U. S. C. § 1343, which conferred district court jurisdiction over civil actions of certain types "authorized by law to be commenced," did not mean to include as "authorized by law" a state-law claim against a party that had been statutorily insulated from similar federal suit. The county had been *"excluded* from liability in § 1983, and therefore by reference in the grant of jurisdiction under § 1343(3)." *Ibid.* (emphasis in original).

We reaffirmed and further refined our approach to pendent-party jurisdiction in *Owen Equipment & Erection Co.* v. *Kroger, supra*, at 372–375—a case, like *Zahn*, involving the diversity statute, 28 U. S. C. § 1332(a)(1), but focusing on the requirement that the suit be "between . . . citizens of dif-

---

[3] *Monroe* v. *Pape* was later overruled by *Monell* v. *New York City Dept. of Social Services*, 436 U. S. 658 (1978).

ferent states," rather than the requirement that it "excee[d]
the sum or value of $10,000." We held that the jurisdiction
which § 1332(a)(1) confers over a "matter in controversy" be-
tween a plaintiff and defendant of diverse citizenship cannot
be read to confer pendent jurisdiction over a different, non-
diverse defendant, even if the *claim* involving that other de-
fendant meets the *Gibbs* test. "*Gibbs,*" we said, "does not
end the inquiry into whether a federal court has power to
hear the nonfederal claims along with the federal ones. Be-
yond this constitutional minimum, there must be an examina-
tion of the posture in which the nonfederal claim is asserted
and of the specific statute that confers jurisdiction over the
federal claim," 437 U. S., at 373.

The most significant element of "posture" or of "context,"
*id.*, at 376, in the present case (as in *Zahn, Aldinger,* and
*Kroger*) is precisely that the added claims involve added par-
ties over whom no independent basis of jurisdiction exists.
While in a narrow class of cases a federal court may assert
authority over such a claim "ancillary" to jurisdiction other-
wise properly vested—for example, when an additional party
has a claim upon contested assets within the court's exclusive
control, see, *e. g., Krippendorf* v. *Hyde,* 110 U. S. 276 (1884);
*Freeman* v. *Howe,* 24 How. 450, 460 (1861), or when neces-
sary to give effect to the court's judgment, see, *e. g., Local
Loan Co.* v. *Hunt,* 292 U. S. 234, 239 (1934); *Julian* v. *Cen-
tral Trust Co.,* 193 U. S. 93, 112–114 (1904)—we have never
reached such a result solely on the basis that the *Gibbs* test
has been met.[4]  And little more basis than that can be relied

---

[4] This Court's decision in *Dewey* v. *West Fairmont Gas Coal Co.,* 123
U. S. 329 (1887), which JUSTICE STEVENS cites in his dissent, see *post,* at
560, n. 6, explicitly rested upon "ancillary" jurisdiction, citing *Krippendorf*
v. *Hyde,* 110 U. S. 276 (1884), in support of its holding that "[t]he suit in
equity was an exercise of jurisdiction . . . ancillary to that which it had al-
ready acquired in the action at law." 123 U. S., at 333. In *Dewey,* the
new defendant added in the equitable counterclaim was asserted to have
been the recipient of a fraudulent conveyance from the insolvent plaintiff,
and the counterclaim was brought under a West Virginia statute authoriz-

upon by petitioner here. As in *Kroger*, the relationship between petitioner's added claims and the original complaint is one of "mere factual similarity," which is of no consequence since "neither the convenience of the litigants nor considerations of judicial economy can suffice to justify extension of the doctrine of ancillary jurisdiction," 437 U. S., at 376–377. It is true that here, unlike in *Kroger*, see *id.*, at 376, the party seeking to bring the added claims had little choice but to be in federal rather than state court, since the FTCA permits the Federal Government to be sued only there. But that alone is not enough, since we have held that suits against the United States under the Tucker Act, 24 Stat. 505 (which can of course be brought only in federal court, see 28 U. S. C. §§ 1346(a)(2), 1491(a)(1)), cannot include private defendants. *United States* v. *Sherwood*, 312 U. S. 584 (1941).

The second factor invoked by *Kroger*, the text of the jurisdictional statute at issue, likewise fails to establish petitioner's case. The FTCA, § 1346(b), confers jurisdiction over "civil actions on claims against the United States." It does not say "civil actions on claims that include requested relief against the United States," nor "civil actions in which there is a claim against the United States"—formulations one might expect if the presence of a claim against the United States constituted merely a minimum jurisdictional requirement, rather than a definition of the permissible scope of FTCA actions. Just as the statutory provision "between . . . citizens of different States" has been held to mean citizens of different States and no one else, see *Kroger*, *supra*, so also here we conclude that "against the United States" means against the United States and no one else.[5] "Due regard for the rightful

---

ing suits to set aside such conveyances in assistance of an anticipated judgment or decree against the conveying debtor. Any decree on the counterclaim would presumably have been worthless if the fraudulent conveyance could not have been recaptured.

[5] JUSTICE STEVENS would distinguish *Kroger* (and *Zahn* v. *International Paper Co.*, 414 U. S. 291 (1973)) from the present case on the

independence of state governments . . . requires that [federal courts] scrupulously confine their own jurisdiction to the precise limits which the statute has defined." *Healy* v. *Ratta*, 292 U. S. 263, 270 (1934); accord, *Executive Jet Aviation, Inc.* v. *Cleveland*, 409 U. S. 249, 272–273 (1972); *Shamrock Oil & Gas Corp.* v. *Sheets*, 313 U. S. 100, 108–109 (1941). The statute here defines jurisdiction in a manner that does not reach defendants other than the United States.[6]

Petitioner contends, however, that an affirmative grant of pendent-party jurisdiction is suggested by changes made to the jurisdictional grant of the FTCA as part of the comprehensive 1948 revision of the Judicial Code.   See Pub. L. 773,

---

ground that, where Congress "has unequivocally indicated its intent that the federal right be litigated in a federal forum, there is reason to believe that Congress did not intend that the substance of the federal right be diminished by the increased costs in efficiency and convenience of litigation in two forums." *Post*, at 577.   It seems to us, however, that one could say precisely the same thing about the diversity jurisdiction involved in *Kroger* and *Zahn:* When Congress has unequivocally indicated its intent that a plaintiff have a right to bring a diversity action in federal court, there is reason to believe that Congress did not intend that the substance of that right be diminished, etc.   We simply do not agree with the inference, in either context.

[6] JUSTICE STEVENS says that "it is perfectly clear that the District Court has . . . statutory power to decide this case," *post*, at 560—which is true if one means this case against the United States.   His dissent then continues, however, "[i]t is also undisputed that this power will not be defeated by the joinder of two private defendants," *ibid.*, supporting that statement by references to Federal Rules of Civil Procedure 14(a) and 20(a), which permit the impleader and joinder of parties, *post*, at 560–561. Unfortunately, the proposition in that second sentence *is* disputed.   Indeed, it is what this case is all about.   More precisely, it is not that the "statutory power to decide this case" is *defeated* by the joinder of a private party for purposes of a claim over which the District Court has no independent jurisdiction, but that the statutory power to decide a case including such a claim simply does not exist, since the FTCA provides jurisdiction only for claims against the United States.   Rules 14(a) and 20(a) in no way alter that reality, since the Federal Rules explicitly provide that they "shall not be construed to extend . . . the jurisdiction of the United States district courts," Fed. Rule Civ. Proc. 82.

62 Stat. 869. In its earlier form, the FTCA had conferred upon district courts "exclusive jurisdiction to hear, determine, and render judgment *on any claim* against the United States" for specified torts. 28 U. S. C. § 931 (1946 ed.) (emphasis added). In the 1948 revision, this provision was changed to "exclusive jurisdiction of *civil actions on claims* against the United States." 28 U. S. C. § 1346(b) (1952 ed.) (emphasis added). Petitioner argues that this broadened the scope of the statute, permitting the assertion of jurisdiction over any "civil action," so long as that action *includes* a claim against the United States. We disagree.

Under established canons of statutory construction, "it will not be inferred that Congress, in revising and consolidating the laws, intended to change their effect unless such intention is clearly expressed." *Anderson* v. *Pacific Coast S. S. Co.*, 225 U. S. 187, 199 (1912); see *United States* v. *Ryder*, 110 U. S. 729, 740 (1884). Concerning the 1948 recodification of the Judicial Code in particular, we have stated that "no changes in law or policy are to be presumed from changes of language in the revision unless an intent to make such changes is clearly expressed." *Fourco Glass Co.* v. *Transmirra Products Corp.*, 353 U. S. 222, 227 (1957); see *Tidewater Oil Co.* v. *United States*, 409 U. S. 151, 162 (1972). We have found no suggestion, much less a clear expression, that the minor rewording at issue here imported a substantive change.

The change from "claim against the United States" to "civil actions on claims against the United States" would be a strange way to express the substantive revision asserted by petitioner—but a perfectly understandable way to achieve another objective. The 1948 recodification came relatively soon after the adoption of the Federal Rules of Civil Procedure, which provide that "[t]here shall be one form of action to be known as 'civil action.'" Fed. Rule Civ. Proc. 2. Consistent with this new terminology, the 1948 revision inserted the expression "civil action" throughout the provisions governing

district-court jurisdiction. See H. R. Rep. No. 308, 80th Cong., 1st Sess., App. A114–A125 (1947) (Reviser's Notes).

Reliance upon the 1948 recodification also ignores the fact that the concept of pendent-party jurisdiction was not considered remotely viable until *Gibbs* liberalized the concept of pendent-claim jurisdiction—nearly 20 years later. See 13B C. Wright, A. Miller, & E. Cooper, Federal Practice and Procedure § 3567.2, pp. 146–148 (2d ed. 1984); Miller, Ancillary and Pendent Jurisdiction, 26 S. Tex. L. J. 1, 11 (1985). Indeed, in 1948 even a relatively limited substantive expansion of pendent-*claim* jurisdiction with respect to unfair competition actions provoked considerable discussion, see Wechsler, Federal Jurisdiction and the Revision of the Judicial Code, 13 Law & Contemp. Prob. 216, 232 (1948); Note, The Proposed Revision of the Federal Judicial Code, 60 Harv. L. Rev. 424, 430–431 (1947), and was described by the chief reviser as one of a dozen "major changes of law" effected by his handiwork, W. Barron, The Judicial Code 1948 Revision, 8 F. R. D. 439, 441–445 (1949). That change, in the already accepted realm of pendent-*claim* jurisdiction, was accomplished by wording that could not be mistaken, referring to "any civil action asserting a claim of unfair competition when joined with a substantial and related claim under the copyright, patent, or trademark laws." § 1338(b), 62 Stat. 931. It is inconceivable that the much more radical change of adopting pendent-party jurisdiction would have been effected by the minor and obscure change of wording at issue here—especially when that revision is more naturally understood as stylistic.

Because the FTCA permits the Government to be sued only in federal court, our holding that parties to related claims cannot necessarily be sued there means that the efficiency and convenience of a consolidated action will sometimes have to be forgone in favor of separate actions in state and federal courts. We acknowledged this potential consid-

eration in *Aldinger*, 427 U. S., at 18, but now conclude that the present statute permits no other result.

\*     \*     \*

As we noted at the outset, our cases do not display an entirely consistent approach with respect to the necessity that jurisdiction be explicitly conferred. The *Gibbs* line of cases was a departure from prior practice, and a departure that we have no intent to limit or impair. But *Aldinger* indicated that the *Gibbs* approach would not be extended to the pendent-party field, and we decide today to retain that line. Whatever we say regarding the scope of jurisdiction conferred by a particular statute can of course be changed by Congress. What is of paramount importance is that Congress be able to legislate against a background of clear interpretive rules, so that it may know the effect of the language it adopts. All our cases — *Zahn*, *Aldinger*, and *Kroger* — have held that a grant of jurisdiction over claims involving particular parties does not itself confer jurisdiction over additional claims by or against different parties. Our decision today reaffirms that interpretive rule; the opposite would sow confusion.

For the foregoing reasons, the judgment of the Court of Appeals is

*Affirmed.*

JUSTICE BLACKMUN, dissenting.

If *Aldinger* v. *Howard*, 427 U. S. 1 (1976), required us to ask whether the Federal Tort Claims Act embraced "an affirmative grant of pendent-party jurisdiction," *ante*, at 553, I would agree with the majority that no such specific grant of jurisdiction is present. But, in my view, that is not the appropriate question under *Aldinger*. I read the Court's opinion in that case, rather, as requiring us to consider whether Congress has demonstrated an intent to *exempt* "the party as to whom jurisdiction pendent to the principal claim" is asserted from being haled into federal court. 427 U. S., at 16 (emphasis omitted). And, as those of us in dissent in *Aldinger* observed, the *Aldinger* test would be rendered mean-

ingless if the required intent could be found in the failure of the relevant jurisdictional statute to mention the type of party in question, "because all instances of asserted pendent-party jurisdiction will by definition involve a party as to whom Congress has impliedly 'addressed itself' by not expressly conferring subject-matter jurisdiction on the federal courts." *Id.*, at 23 (BRENNAN, J., dissenting).

In *Aldinger*, the Court found the requisite intent to exclude municipalities from the relevant jurisdictional statute, because (the Court then thought) municipalities had been affirmatively excluded by Congress from the scope of 42 U. S. C. § 1983. In such a case, the Court barred the use of the pendent-party doctrine, for otherwise the doctrine would permit an end run around an express congressional limitation of federal power. See *id.*, at 16–17.

In the present case, I find no such substantive limitation. Nor, in my view, is there any other expression of congressional intent to exclude private defendants from federal tort claims litigation. *United States* v. *Sherwood*, 312 U. S. 584 (1941), is not to the contrary. There, this Court held that Congress did not intend under the Tucker Act to permit the district courts to adjudicate any cause of action that could not have been brought in the Court of Claims, an Article I court in which no private party could be a defendant. *Sherwood* did not turn solely on a canon of "conservatism which is appropriate in the case of a waiver of sovereign immunity." *Id.*, at 590. It turned also upon "the history of the Court of Claims' jurisdiction." *Id.*, at 590–591. There is no equivalent history of adjudication of tort claims against the United States in a tribunal without power to litigate the liability of private tortfeasors; thus, *Sherwood* does not require the result the Court reaches today.

In a case not controlled by any express intent to limit the scope of a constitutional "case," *Aldinger* suggests that the appropriateness of pendent-party jurisdiction might turn on the "alignmen[t] of parties and claims," and that one significant factor is whether "the grant of jurisdiction to [the] fed-

eral court is exclusive," 427 U. S., at 18, as is the situation here. Where, as here, Congress' preference for a federal forum for a certain category of claims makes the federal forum the *only* possible one in which the constitutional case may be heard as a whole, the sensible result is to permit the exercise of pendent-party jurisdiction. *Aldinger* imposes no obstacle to that result, and I would not reach out to create one. I therefore dissent.

JUSTICE STEVENS, with whom JUSTICE BRENNAN and JUSTICE MARSHALL join, dissenting.

The Court's holding is not faithful to our precedents and casually dismisses the accumulated wisdom of our best judges. As we observed more than 16 years ago, "numerous decisions throughout the courts of appeals since [*Mine Workers* v. *Gibbs*, 383 U. S. 715 (1966),] have recognized the existence of judicial power to hear pendent claims involving pendent parties where 'the entire action before the court comprises but one constitutional "case"' as defined in *Gibbs*." *Moor* v. *County of Alameda*, 411 U. S. 693, 713 (1973). I shall first explain why the position taken by the overwhelming consensus of federal judges is correct and then comment on major flaws in the opinion the Court announces today.

I

Article III of the Constitution identifies the categories of "Cases" and "Controversies" that federal courts may have jurisdiction to decide.[1] If a case is not within one of the

---

[1] Article III, § 2, provides in part:

"The judicial Power shall extend to all Cases, in Law and Equity, arising under this Constitution, the Laws of the United States, and Treaties made, or which shall be made, under their Authority;—to all Cases affecting Ambassadors, other public Ministers and Consuls;—to all Cases of admiralty and maritime Jurisdiction;—to Controversies to which the United States shall be a Party;—to Controversies between two or more States;—between a State and Citizens of another State;—between Citizens of different States;—between Citizens of the same State claiming Lands under Grants

specified categories, neither Congress nor the parties may authorize a federal court to decide it.[2]  Objections to a federal court's jurisdiction over the subject matter of a case cannot be waived.[3]  Although Article III strictly confines the subject-matter jurisdiction of federal courts, it does not limit the extent of the courts' personal jurisdiction over individual parties[4] or their power to decide individual claims in cases within any of the specified categories.[5]  A party beyond the reach of a federal court's process may voluntarily submit to its jurisdiction over his person, but he cannot create subject-matter jurisdiction—by waiver, estoppel, or the filing of a lawsuit—over a non-Article III case.[6]

of different States, and between a State, or the Citizens thereof, and foreign States, Citizens or Subjects."

[2] See, e. g., Verlinden B. V. v. Central Bank of Nigeria, 461 U. S. 480, 491 (1983); National Mutual Ins. Co. v. Tidewater Transfer Co., 337 U. S. 582, 646–655 (1949) (Frankfurter, J., dissenting).

[3] See, e. g., Insurance Corp. of Ireland, Ltd. v. Compagnie des Bauxites de Guinee, 456 U. S. 694, 702 (1982); Sosna v. Iowa, 419 U. S. 393, 398 (1975); Mansfield, C. & L. M. R. Co. v. Swan, 111 U. S. 379 (1884).

[4] See, e. g., Insurance Corp. of Ireland, Ltd. v. Compagnie des Bauxites de Guinee, supra; Petrowski v. Hawkeye-Security Ins. Co., 350 U. S. 495 (1956).

[5] See, e. g., Verlinden B. V., 461 U. S., at 491; Osborn v. Bank of United States, 9 Wheat. 738 (1824).

[6] "Gibbs concerned a state-law claim jurisdictionally pendent to one of federal law, but no reason appears why the identical principles should not equally apply to pendent state-law claims involving the joinder of additional parties.  In either case the Art. III question concerns only the subject matter and not the in personam jurisdiction of the federal courts.  In either case the question of Art. III power in the federal judiciary to exercise subject-matter jurisdiction concerns whether the claims asserted are such as 'would ordinarily be expected to [be tried] in one judicial proceeding,' and the question of discretion addresses 'considerations of judicial economy, convenience and fairness to litigants.'

"To recognize that the addition of parties under the pendent jurisdiction of the federal courts will sometimes alter the balance of 'judicial economy, convenience and fairness,' or sometimes threaten to embroil federal courts in the resolution of uncertain questions of state law, and thereby make the exercise of this discretionary jurisdiction inappropriate, is only to speak to the question of the proper exercise of judicial discretion in the circum-

The case before us today is one in which the United States is a party. Given the plain language of Article III, there is not even an arguable basis for questioning the federal court's constitutional power to decide it.[7] Moreover, by enacting the Federal Tort Claims Act (FTCA) in 1946, 28 U. S. C. § 1346(b), Congress unquestionably authorized the District Court to accept jurisdiction of "civil actions on claims against the United States." Thus, it is perfectly clear that the District Court has both constitutional and statutory power to decide this case.

It is also undisputed that this power will not be defeated by the joinder of two private defendants. Rule 14(a) of the Federal Rules of Civil Procedure expressly authorizes the defendant to implead joint tortfeasors,[8] and this Rule is appli-

---

stances and does not vitiate the *Gibbs* analysis or its application to the question of pendent-party jurisdiction." *Aldinger* v. *Howard*, 427 U. S. 1, 20–21 (1976) (BRENNAN, J., dissenting) (footnote omitted).

See also Currie, Pendent Parties, 45 U. Chi. L. Rev. 753, 755 (1978); Fortune, Pendent Jurisdiction—The Problem of "Pendenting Parties," 33 U. Pitt. L. Rev. 1, 12 (1972); Schenkier, Ensuring Access to Federal Courts: A Revised Rationale for Pendent Jurisdiction, 75 Nw. U. L. Rev. 245, 281 (1980); Note, 64 B. U. L. Rev. 895, 942 (1985).

The Court has upheld the authority of a federal court to entertain counterclaims against a plaintiff, see *Moore* v. *New York Cotton Exchange*, 270 U. S. 593 (1926), and a third-party defendant, *Dewey* v. *West Fairmont Gas Coal Co.*, 123 U. S. 329 (1887), notwithstanding that the claims do not have an independent jurisdictional basis. See also *Owen Equipment & Erection Co.* v. *Kroger*, 437 U. S. 365, 375 (1978) ("[T]he exercise of ancillary jurisdiction over nonfederal claims has often been upheld in situations involving impleader, cross-claims or counterclaims").

[7] Federal jurisdiction is supported not only by the fact that the case is one arising under a law of the United States, but also that it is a controversy to which the United States is a party. See *Glidden Co.* v. *Zdanok*, 370 U. S. 530, 565 (1962) (opinion of Harlan, J.); *Minnesota* v. *Hitchcock*, 185 U. S. 373, 384–386 (1902); *Ortiz* v. *United States Government*, 595 F. 2d 65, 69–70 (CA1 1979).

[8] Rule 14(a) provides in part:

"At any time after commencement of the action a defending party, as a third-party plaintiff, may cause a summons and complaint to be served

cable to FTCA cases.[9]  Moreover, if the claim against non-federal defendants had been properly brought in a federal court, those defendants could require the United States to defend their claim for contribution in that action.[10]  The dispute between all the parties derives from a common nucleus of operative fact.  There is accordingly ample basis for regarding this entire three-cornered controversy as a single "case" and for allowing petitioner to assert additional claims against the nonfederal defendants as she is authorized to do by Rule 20(a) of the Federal Rules.[11]

Prior to the adoption of the Federal Rules of Civil Procedure in 1938, the federal courts routinely decided state-law claims in cases in which they had subject-matter jurisdiction, see, *e. g.*, *Hurn* v. *Oursler*, 289 U. S. 238, 246 (1933); *Siler*

---

upon a person not a party to the action who is or may be liable to the third-party plaintiff for all or part of the plaintiff's claim against the third-party plaintiff."

[9] "Of course there is no immunity from suit *by* the Government to collect claims for contribution due it from its joint tort-feasors.  The Government should be able to enforce this right in a federal court not only in a separate action but by impleading the joint tort-feasor as a third-party defendant. See 3 Moore's Federal Practice (2d ed. 1948) 507, *et seq.*  It is fair that this should work both ways."  *United States* v. *Yellow Cab Co.*, 340 U. S. 543, 551–552 (1951).

[10] "The Government contends that, even if the Federal Tort Claims Act carries the Government's consent to be sued in a separate action for contribution due a joint tort-feasor, it does not carry consent to be impleaded as a third-party defendant to meet such a claim.

"We find nothing in the nature of the rights and obligations of joint tort-feasors to require such a procedural distinction, nor does the Act state such a requirement.  On the contrary, the Act expressly makes the Federal Rules of Civil Procedure applicable, and Rule 14 provides for third-party practice."  *Id.*, at 553 (footnotes omitted).

[11] Rule 20(a) provides in part:

"All persons . . . may be joined in one action as defendants if there is asserted against them jointly, severally, or in the alternative, any right to relief in respect of or arising out of the same transaction, occurrence, or series of transactions or occurrences and if any question of law or fact common to all defendants will arise in the action."

v. *Louisville & Nashville R. Co.*, 213 U. S. 175 (1909), and granted relief against nondiverse parties on state claims as to which there was no independent basis for federal jurisdiction, see, *e. g.*, *Moore* v. *New York Cotton Exchange*, 270 U. S. 593 (1926); *Julian* v. *Central Trust Co.*, 193 U. S. 93, 112–114 (1904); *Freeman* v. *Howe*, 24 How. 450, 460 (1861).[12] Although the contours of the federal cause of action — or "case" — were then more narrowly defined than they are today, see, *e. g.*, *Hurn* v. *Oursler*, *supra*, the doctrine of "pendent" or "ancillary" jurisdiction had long been firmly established. The relevant change that was effectuated by the adoption of the Rules in 1938 was, in essence, a statutory broadening of the dimensions of the cases that federal courts may entertain.

The Court's unanimous opinion[13] in *Mine Workers* v. *Gibbs*, 383 U. S. 715 (1966), highlights the modern conception of a "civil action" and a "constitutional case." At issue was the exercise of pendent jurisdiction over a state-law claim in an action brought under the Labor Management Relations Act, 1947.[14] We wrote:

---

[12] See also *Dewey* v. *West Fairmont Gas Coal Co.*, 123 U. S. 329 (1887).

[13] Although Chief Justice Warren took no part in the decision and Justices Harlan and Clark wrote separately with respect to certain issues, JUSTICE BRENNAN's opinion on the jurisdictional issue was unanimous.

[14] Jurisdiction was asserted on the basis of § 303 of the Labor Management Relations Act, 1947, which provided:

"(a) It shall be unlawful, for the purpose of this section only, in an industry or activity affecting commerce, for any labor organization to engage in any activity or conduct defined as an unfair labor practice in section 158(b)(4) of this title.

"(b) Whoever shall be injured in his business or property by reason [of] any violation of subsection (a) of this section may sue therefor in any district court of the United States subject to the limitations and provisions of section 185 of this title without respect to the amount in controversy, or in any other court having jurisdiction of the parties, and shall recover the damages by him sustained and the cost of the suit." 61 Stat. 158, 29 U. S. C. § 187 (1964 ed.). See *Mine Workers* v. *Gibbs*, 383 U. S., at 717, n. 1.

"*Hurn* was decided in 1933, before the unification of law and equity by the Federal Rules of Civil Procedure. At the time, the meaning of 'cause of action' was a subject of serious dispute; the phrase might 'mean one thing for one purpose and something different for another.' *United States* v. *Memphis Cotton Oil Co.*, 288 U. S. 62, 67–68. The Court in *Hurn* identified what it meant by the term by citation of *Baltimore S. S. Co.* v. *Phillips*, 274 U. S. 316, a case in which 'cause of action' had been used to identify the operative scope of the doctrine of *res judicata*. In that case the Court had noted that '"the whole tendency of our decisions is to require a plaintiff to try his whole cause of action and his whole case at one time."' 274 U. S., at 320.

.        .        .        .        .

"With the adoption of the Federal Rules of Civil Procedure and the unified form of action, Fed. Rule Civ. Proc. 2, much of the controversy over 'cause of action' abated. The phrase remained as the keystone of the *Hurn* test, however, and, as commentators have noted, has been the source of considerable confusion. Under the Rules, the impulse is toward entertaining the broadest possible scope of action consistent with fairness to the parties; joinder of claims, parties and remedies is strongly encouraged. Yet because the *Hurn* question involves issues of jurisdiction as well as convenience, there has been some tendency to limit its application to cases in which the state and federal claims are, as in *Hurn*, 'little more than the equivalent of different epithets to characterize the same group of circumstances.' 289 U. S., at 246.

"This limited approach is unnecessarily grudging. Pendent jurisdiction, in the sense of judicial *power*, exists whenever there is a claim 'arising under [the] Constitution, the Laws of the United States, and Treaties made, or which shall be made, under their Authority . . . ,'

U. S. Const., Art III, § 2, and the relationship between that claim and the state claim permits the conclusion that the entire action before the court comprises but one constitutional 'case.' The federal claim must have substance sufficient to confer subject matter jurisdiction on the court. *Levering & Garrigues Co.* v. *Morrin,* 289 U. S. 103. The state and federal claims must derive from a common nucleus of operative fact. But if, considered without regard to their federal or state character, a plaintiff's claims are such that he would ordinarily be expected to try them all in one judicial proceeding, then, assuming substantiality of the federal issues, there is *power* in federal courts to hear the whole." *Id.,* at 722–725 (emphasis in original; footnotes omitted).[15]

Immediately after *Gibbs* was decided,[16] federal judges throughout the Nation recognized that its reasoning applied to cases in which it was necessary to add an additional party on a pendent, nonfederal claim in order to grant complete relief. For example, Judge Henry Friendly considered this

---

[15] The Court is correct to treat *Gibbs* as established law. See *ante,* at 548–549, 556. Just last Term we stated: "*Gibbs* establishes that the pendent jurisdiction doctrine is designed to enable courts to handle cases involving state-law claims in the way that will best accommodate the values of economy, convenience, fairness, and comity, and *Gibbs* further establishes that the judicial branch is to shape and apply the doctrine in that light." *Carnegie-Mellon Univ.* v. *Cohill,* 484 U. S. 343, 351 (1988). See also *Merrell Dow Pharmaceuticals Inc.* v. *Thompson,* 478 U. S. 804, 817, n. 15 (1986); *Pennhurst State School and Hospital* v. *Halderman,* 465 U. S. 89, 117 (1984); *Schmidt* v. *Oakland Unified School Dist.,* 457 U. S. 594 (1982); *Moor* v. *County of Alameda,* 411 U. S. 693 (1973). Cf. *Hagans* v. *Lavine,* 415 U. S. 528, 545–548 (1974); *Rosado* v. *Wyman,* 397 U. S. 397, 404–405 (1970).

[16] Although the Court suggests that "the concept of pendent-party jurisdiction was not considered remotely viable until *Gibbs* liberalized the concept of pendent-claim jurisdiction," *ante,* at 555, some courts exercised a form of pendent-party jurisdiction even prior to that decision. See, *e. g., Borror* v. *Sharon Steel Co.,* 327 F. 2d 165 (CA3 1964); *Morris* v. *Gimbel Bros., Inc.* 246 F. Supp. 984 (ED Pa. 1965).

precise question in three separate opinions.[17]   Because he is universally recognized not only as one of our wisest judges,[18] but also as one with special learning and expertise in matters of federal jurisdiction,[19] a reference to each of those opinions is appropriate.

In *Leather's Best, Inc.* v. *S. S. Mormaclynx*, 451 F. 2d 800 (CA2 1971), Judge Friendly summarized the understanding of the *Gibbs* doctrine that prevailed in 1971, as follows:

"To be sure, the *Gibbs* Court was not confronted with the question whether pendent jurisdiction extended to a state claim against a party not named in the federal claim. But as we have recently observed in Astor-Honor, Inc. v. Grosset & Dunlap, Inc., 441 F. 2d 627, 629 (2 Cir. 1971), 'Mr. Justice Brennan's language and the common sense considerations underlying it seem broad enough to cover that problem also.   See Note, UMW v. Gibbs and Pendent Jurisdiction, 81 Harv. L. Rev. 657, 664 (1968).'   In

[17] The opinions were anticipated by Judge Friendly's opinions in *United States* v. *Heyward-Robinson Co.*, 430 F. 2d 1077, 1087 (CA2 1970) (concurring opinion), cert. denied, 400 U. S. 1021 (1971), involving permissive counterclaims, and *Astor-Honor, Inc.* v. *Grosset & Dunlap, Inc.*, 441 F. 2d 627 (CA2 1971), upholding pendent-party jurisdiction under 28 U. S. C. § 1338(b).

[18] In 1963, Justice Frankfurter regarded him "as the best judge now writing opinions on the American scene," see Freund, In Memoriam: Henry J. Friendly, 99 Harv. L. Rev. 1709, 1720 (1986); Erwin Griswold has described him as "the ablest lawyer of my generation," *ibid.*, and Judge Posner called him "the greatest federal appellate judge of his time," *id.*, at 1724.

[19] See H. Friendly, Federal Jurisdiction: A General View (1973); see also, Paul Freund's comments in 99 Harv. L. Rev., at 1716–1718, and David Currie's comments in On Blazing Trails: Judge Friendly and The Federal Jurisdiction, 133 U. Pa. L. Rev. 5 (1984).   The authors of Hart & Wechsler's The Federal Courts and The Federal System, who dedicated the first two editions of the book to Justice Frankfurter and Professor Henry M. Hart, Jr., respectively, dedicate the third edition to Judge Friendly whom they describe as "man for all seasons in the law; master of this subject."   P. Bator, D. Meltzer, P. Mishkin, & D. Shapiro, Hart and Wechsler's The Federal Courts and The Federal System xix (3d ed. 1988).

that decision, involving federal claims under the copyright laws and state claims of unfair trade practice and unfair competition, including a defendant not named in the copyright claims, we held that a federal court had power to hear a state claim against a party not named in the federal claim, provided the *Gibbs* test was met, noting that this conclusion was buttressed by our decisions concerning ancillary jurisdiction to entertain compulsory counterclaims under F. R. Civ. P. 13(a), United Artists Corp. v. Masterpiece Productions, Inc., 221 F. 2d 213 (2 Cir. 1955), and third-party claims under F. R. Civ. P. 14(a), Dery v. Wyer, 265 F. 2d 804 (2 Cir. 1959)." *Id.*, at 809–810.

It is noteworthy that in his *Leather's Best* opinion, Judge Friendly relied, in part, on the Federal Rules of Civil Procedure, just as JUSTICE BRENNAN had done in the *Gibbs* opinion itself. Indeed, in another paragraph of his opinion, Judge Friendly concluded that the 1966 amendments to the Rules made it appropriate to extend the ancillary jurisdiction doctrine to the admiralty context as well as to ordinary civil cases.[20] In another opinion in 1971, he unequivocally con-

---

[20] "It is true that in those cases, as well as in *Astor-Honor*, [441 F. 2d 627 (CA2 1971),] the federal claim had arisen in the ordinary civil jurisdiction, whereas the federal claim in this action had been brought under the admiralty jurisdiction. At an earlier date, this difference might have affected our decision here. But the rules of procedure in the admiralty and civil jurisdictions were merged in 1966, and we are of the opinion that at least since that merger, the constitutional rationale which underlies the doctrine of ancillary jurisdiction in the context of Rule 13(a) and Rule 14 may be applied to support the conclusion that a federal court has the power to hear a related state claim against a defendant not named in the federal claim regardless of whether the federal claim arises in the civil or admiralty jurisdiction. Thus, we conclude that in a case such as this, where the facts underlying the state and federal claims are identical, a federal court vested with admiralty jurisdiction over a shipper's claim against the carrier for breach of contract of carriage does have the 'power' also to entertain its state tort claim against a pier operator." *Leather's Best, Inc. v. S. S. Mormaclynx*, 451 F. 2d 800, 810–811 (CA2 1971) (footnotes omitted).

cluded that "the doctrine of pendent jurisdiction is sufficiently broad to support a claim within the limits of *Gibbs* against a person not a party to the primary, jurisdiction-granting claim." *Almenares* v. *Wyman*, 453 F. 2d 1075, 1083 (CA2 1971), cert. denied, 405 U. S. 944 (1972).[21]

Before Judge Friendly addressed this issue for the third time, we decided *Aldinger* v. *Howard*, 427 U. S. 1 (1976). In that case, after declining to announce any general rule governing pendent-party jurisdiction, we held that such jurisdiction should not be exercised if Congress has "expressly or by implication negated its existence" in the statute granting subject-matter jurisdiction over the particular claim before the Court. *Id.*, at 18–19. Specifically, we concluded that the Civil Rights Acts, as then interpreted, precluded the joinder of a municipal corporation as a defendant to a claim asserted pursuant to 42 U. S. C. § 1983 or to a state-law claim pendent to such a federal claim. Although a reasonable argument can be made that the Court misconstrued the intent of Congress in that case, see 427 U. S., at 23–37 (BRENNAN, J., dissenting), there surely can be no quarrel with the proposition that Congress may withdraw or deny pendent jurisdiction over particular claims or parties.

In his third "pendent-party" opinion, Judge Friendly correctly described the limited scope of our holding in *Aldinger*. He wrote:

"Although the *Aldinger* Court disapproved of the joinder of a pendent party defendant in the case before it, the

---

[21] Relying on an earlier opinion authored by then-Judge Blackmun, *Hatridge* v. *Aetna Casualty & Surety Co.*, 415 F. 2d 809 (CA8 1969), the Court of Appeals for the Eighth Circuit in 1973 advanced this additional reason for not excluding pendent-party jurisdiction from the *Gibbs* doctrine:

"'[I]t would be an unjustifiable waste of judicial and professional time—indeed, a travesty on sound judicial administration—to allow plaintiff to try his [federal and state claims against certain codefendants] in Federal court but to require him to prosecute a claim involving precisely the same facts against [a codefendant joined pursuant only to the pendent state-law claim] in a State court.'" *Schulman* v. *Huck Finn, Inc.*, 472 F. 2d 864, 866 (1973) (quoting 350 F. Supp. 853, 858 (Minn. 1972)).

Court explicitly limited its conclusion to 'the issue of so-called "pendent party" jurisdiction with respect to a claim brought under [28 U. S. C.] § 1343(3) and [42 U. S. C. §] 1983,' [427 U. S.,] at 18, . . . and noted that '[o]ther statutory grants and other alignments of parties and claims might call for a different result,' *id.*, and that 'it would be as unwise as it would be unnecessary to lay down any sweeping pronouncement upon the existence or exercise of such jurisdiction,' *id.*

"The circumstances here are about as powerful for the exercise of pendent party jurisdiction as can be imagined. The exclusivity of federal jurisdiction over claims for violation of the Securities Exchange Act makes a federal court the only one where a complete disposition of federal and related state claims can be rendered. Cf. the Court's comment in *Aldinger* that '[w]hen the grant of jurisdiction to a federal court is exclusive, for example, as in the prosecution of tort claims against the United States under 28 U. S. C. § 1346, the argument of judicial economy and convenience can be coupled with the additional argument that *only* in federal court may all of the claims be tried together,' 427 U. S. at 18. . . ." *Weinberger* v. *Kendrick*, 698 F. 2d 61, 76–77 (CA2 1982), cert. denied, 464 U. S. 818 (1983).

In the *Weinberger* case the circumstances were "about as powerful for the exercise of pendent party jurisdiction as can be imagined" because Congress had vested the federal courts with exclusive jurisdiction over claims arising under the Securities Exchange Act. The Federal District Court was therefore the only forum in which the entire constitutional case could be tried at one time. That powerful circumstance is also present in cases arising under the FTCA. In fact, in dicta, the *Aldinger* Court suggested that pendent-party ju-

risdiction might be available under the FTCA for precisely this reason. 427 U. S., at 18.

I would thus hold that the grant of jurisdiction to hear "civil actions on claims against the United States" authorizes the federal courts to hear state-law claims against a pendent party. As many other judges have recognized,[22] the fact that such claims are within the exclusive federal jurisdiction, together with the absence of any evidence of congressional disapproval of the exercise of pendent-party jurisdiction in FTCA cases,[23] provides a fully sufficient

---

[22] In *Moor*, 411 U. S., at 713–714, in 1973, we noted that the Ninth Circuit rule denying pendent-party jurisdiction "stands virtually alone against this post-*Gibbs* trend in the courts of appeals." An overwhelming number of judges adhered to that view after *Aldinger* was decided. See, *e. g.*, *Dick Meyers Towing Service, Inc* v. *United States*, 577 F. 2d 1023 (CA5 1978), cert. denied, 440 U. S. 908 (1979); *Ortiz* v. *United States Government*, 595 F. 2d 65 (CA1 1979); *Edwards* v. *United States*, 672 F. Supp. 910 (ED Va. 1987); *Kennedy* v. *United States*, 643 F. Supp. 1072 (EDNY 1986); *Verdi* v. *United States*, 636 F. Supp. 114 (EDNY 1986); *Fried* v. *United States*, 579 F. Supp. 1212 (ND Ill. 1983); *Kattner* v. *United States*, 585 F. Supp. 240 (ED Tex. 1984); *Rogers* v. *United States*, 568 F. Supp. 894 (EDNY 1983); *DeBellas* v. *United States*, 542 F. Supp. 999 (SDNY 1982); *Johnston* v. *United States*, 546 F. Supp. 879 (Kan. 1982); *Obenshain* v. *Halliday*, 504 F. Supp. 946 (ED Va. 1980); *Dumansky* v. *United States*, 486 F. Supp. 1078 (NJ 1980); *Pearce* v. *United States*, 450 F. Supp. 613 (Kan. 1978); *Wood* v. *Standard Products Co.*, 456 F. Supp. 1098 (ED Va. 1978); *Maltais* v. *United States*, 439 F. Supp. 540 (NDNY 1977).

[23] "[W]e find no congressional disapproval of the exercise of such pendent party jurisdiction in the FTCA. The waiver of immunity, granting jurisdiction to the federal district courts of such tort suits against the Government, was made in 'sweeping language.' *United States* v. *Yellow Cab Co.*, 340 U. S. 543 (1951). Moreover the grant of jurisdiction was made exclusively to the federal courts. Thus there is no indication that Congress declined to extend federal jurisdiction over such a pendent party as was the case in *Aldinger*.

"We hold, therefore, that subject matter jurisdiction in the district court existed of the claim against Nuss as one over which the district court properly exercised jurisdiction, pendent to the claim against the Government

justification for applying the holding in *Gibbs* to this case.[24]

---

under the FTCA over which the federal court has exclusive jurisdiction." *Stewart* v. *United States*, 716 F. 2d 755, 757–759 (CA10 1982) (footnote and citation omitted), cert. denied, 469 U. S. 1018 (1984).

In *Lykins* v. *Pointer, Inc.*, 725 F. 2d 645 (CA11 1984), another Court of Appeals reached the same conclusion:

"Turning first to a consideration of 28 U. S. C. § 1346(b), the statute granting federal jurisdiction over plaintiff's tort claim against the United States, we find no express or implied negation of the federal courts' power to hear pendent party claims when that statute is invoked to confer jurisdiction on the district court. In this respect this case is distinguishable from *Kroger* and *Aldinger*. . . .

"No such indicia of a restrictive legislative intent toward pendent party jurisdiction exist here. Neither the FTCA nor its jurisdiction-granting statute contains any express proscription of such jurisdiction, and the statute has not spawned any restrictive judicial interpretations that could have been tacitly embraced by Congress. *Ortiz*, 595 F. 2d at 73.[4]" *Id.*, at 647–648.

In footnote 4, the court wrote:

"In addition, the primary purpose of the FTCA is to 'avoid injustice to those having meritorious claims hitherto barred by sovereign immunity.' *United States* v. *Muniz*, 374 U. S. 150, 154. . . . This goal reflects a congressional attitude sensitive to plaintiffs seeking recovery, one which is furthered by permitting plaintiffs to pursue in a single lawsuit their claims for injuries suffered in a single accident. As the Supreme Court noted in *Aldinger*, since Congress in section 1346(b) granted the district courts exclusive jurisdiction, only in federal court can all such claims be heard together. 427 U. S. at 18. . . ." *Id.*, at 648, n. 4.

[24] The Government argues that the panoply of special rules applicable to claims against the United States "underscores the importance of respecting the single-party limit on the jurisdictional grant of 28 U. S. C. 1346(b)." Brief for United States 30. It notes that an FTCA claim against the Government must be tried without a jury whereas pendent state-law claims would generally be subject to trial by jury under the Seventh Amendment; that the Government cannot be held liable for punitive damages or on a strict-liability theory whereas both may be available against a private party; that the Government has numerous defenses and immunities not available to a private party; and that a claimant against the Government under the FTCA must comply with the Act's administrative claim

## II

The Court's contrary conclusion rests on an insufficient major premise, a failure to distinguish between diversity and federal-question cases, and an implicit reliance on a narrow view of the waiver of sovereign immunity in the FTCA.[25]

procedures. *Id.*, at 29–30. That submission ignores the fact that "pendent jurisdiction is a doctrine of discretion, not of plaintiff's right." *Mine Workers* v. *Gibbs*, 383 U. S., at 726; see *Moor* v. *County of Alameda*, 411 U. S., at 716–717. While the presence of any of these factors in a particular case may weigh against the exercise of pendent jurisdiction, they certainly do not deprive the court of the power to hear the pendent claim. The *Yellow Cab* Court provided sufficient answer in response to a similar complaint regarding the impleader of the United States in an action between private parties:

"Such difficulties are not insurmountable. If, for example, a jury had been demanded in the *Yellow Cab* case, the decision of jury and nonjury issues could have been handled in a manner comparable to that used when issues of law are tried to a jury and issues of an equitable nature in the same case are tried by the court alone. If special circumstances had demonstrated the inadvisability, in the first instance, of impleading the United States as a third-party defendant, the leave of court required by Rule 14 could have been denied. If, at a later stage, the situation had called for a separation of the claims, the court could have ordered their separate trial. Fed. Rules Civ. Proc., 42(b). The availability of third-party procedure is intended to facilitate, not to preclude, the trial of multiple claims which otherwise would be triable only in separate proceedings. The possibility of such procedural difficulties is not sufficient ground for so limiting the scope of the Act as to preclude its application to all cases of contribution or even to all cases of contribution arising under third-party practice." *United States* v. *Yellow Cab Co.*, 340 U. S., at 555–556.

[25] The Court notes that the 1948 recodification of the Judicial Code, which amended the jurisdictional grant in the FTCA to provide for "*'civil actions* on claims against the United States,'" came relatively soon after the adoption of the Federal Rules of Civil Procedure, providing that "'[t]here shall be one form of action to be known as "civil action."'" *Ante*, at 554 (quoting Fed. Rule Civ. Proc. 2). The Court, however, rejects reliance on the plain meaning of the words "civil action"—which after all might explain the assertion of pendent-claim, as well as pendent-party, jurisdiction, see Freer, A Principled Statutory Approach to Supplemental Jurisdiction, 1987 Duke L. J. 34, 56–58—on the basis of dubious legislative history that the revisers did not intend to effect such a radical change through "the minor and ob-

The Court treats the absence of an affirmative grant of jurisdiction by Congress as though it constituted the kind of implicit rejection of pendent jurisdiction that we found in *Aldinger* v. *Howard*, 427 U. S. 1 (1976). Its opinion laboriously demonstrates that the FTCA "defines jurisdiction in a manner that does not reach defendants other than the United States," *ante*, at 553, and that the language of the statute cannot be construed as "adopting pendent-party jurisdiction," *ante*, at 555. That, of course, is always the predicate for the question whether a federal court may rely on the doctrine of ancillary or pendent jurisdiction to fill a gap in the relevant jurisdictional statute. If the Court's demonstration were controlling, *Gibbs*, *Hurn*, and *Moore*, as well as a good many other cases, were incorrectly decided.[26]

---

scure change of wording at issue here." *Ante*, at 555. The authorities the Court cites do not support this proposition. See W. Barron, The Judicial Code 1948 Revision, 8 F. R. D. 439, 442 (1949) (characterizing § 1338(b) as "statutory confirmation of the jurisdiction of federal courts").

Ironically, the Court does not rely on the legislative history that could support its judgment. The legislative history of the FTCA indicates that Congress may have originally intended that the United States not be joined as a defendant in an action with private parties. The House Report on an earlier version of what eventually became the FTCA thus stated: "The bill therefore does not permit any person to be joined as a defendant with the United States and does not lift the immunity of the United States from tort actions except as jurisdiction is specifically conferred upon the district courts by this bill. (See *United States* v. *Sherwood*, 312 U. S. 584 (1941); *Lynn* v. *United States*, 110 F. (2d) 586, 588 (C. C. A. 5th 1940); *Waite* v. *United States*, 57 C. Cls. 546 (1922); *Jackson* v. *United States*, 27 C. Cls. 74, 84 (1891))." H. R. Rep. No. 1287, 79th Cong., 1st Sess., 5 (1945). The Court in *Yellow Cab* rejected the identical argument, noting that those statements "were entirely omitted from even the sectional analysis of the measure when in 1946 it was incorporated in the Reorganization Bill and the report on it was made by the Senate Committee on the Organization of Congress." 340 U. S., at 551–552, and n. 8. The Government here has not offered sufficient reason to reject the *Yellow Cab* Court's understanding of that legislative history.

[26] The Court is mistaken in asserting that this approach is somehow inconsistent with the principle that a court does not have subject-matter

In *Aldinger*, we adopted a rule of construction that assumed the existence of pendent jurisdiction unless "Congress in the statutes conferring jurisdiction has . . . expressly or by implication negated its existence," 427 U. S., at 18.[27] We rejected the assertion of pendent-party jurisdiction there because it arose "not in the context of congressional silence or tacit encouragement, but in quite the opposite context." *Id.*, at 15–16.[28] Congress' exclusion of municipal corporations from the definition of persons under § 1983, we concluded, evinced an intent to preclude the exercise of federal-court jurisdiction over them. If congressional silence were sufficient to defeat pendent jurisdiction, the careful reasoning in our *Aldinger* opinion was wholly unnecessary, for obviously the civil rights statutes do not affirmatively authorize the joinder of any state-law claims.

A similar approach, focusing on a legislative intent to bar a party from federal court, guided our analysis in *Zahn* v. *International Paper Co.*, 414 U. S. 291 (1973), and *Owen Equipment & Erection Co.* v. *Kroger*, 437 U. S. 365 (1978).

---

jurisdiction over an action unless an Act of Congress has supplied it. The District Court clearly had jurisdiction over this case, and the only question is the scope of its authority to consider specific claims.

[27] See also *Owen Equipment & Erection Co.* v. *Kroger*, 437 U. S., at 373.

[28] Although we did state in *Aldinger* that "'the addition of a completely new party would run counter to the well-established principle that federal courts . . . are courts of limited jurisdiction marked out by Congress,'" *ante*, at 550 (quoting *Aldinger*, 427 U. S., at 15), the Court is incorrect to suggest that we found from that principle a "significant legal difference" between the addition of claims and the addition of parties. That statement came in the context of the discussion of the "purely factual" differences in efficiency between the two situations—concerns which the Court accurately notes do not go to the power to exercise pendent jurisdiction. The only legal difference the *Aldinger* Court identified was one of statutory construction. In § 1343 and § 1983, as opposed to the statutes under which the Court had exercised pendent-claim jurisdiction, "Congress ha[d] addressed itself to the party as to whom jurisdiction pendent to the principal claim [was] sought" and expressly excluded it from federal jurisdiction. 427 U. S., at 16.

In *Zahn*, we surveyed the "firmly rooted" law that "multiple plaintiffs with separate and distinct claims must each satisfy the jurisdictional-amount requirement for suit in federal courts," 414 U. S., at 294, and refused to adopt a rule that would allow putative plaintiffs who could not meet the jurisdictional amount to assert claims pendent to jurisdictionally sufficient claims. We noted that adoption of such a rule "would undermine the purpose and intent of Congress in providing that plaintiffs in diversity cases must present claims in excess of the specified jurisdictional amount" and would depart from "the historic construction of the jurisdictional statutes, left undisturbed by Congress over these many years." *Id.*, at 301. In *Kroger*, the rule at issue was the requirement that a plaintiff invoking diversity jurisdiction plead complete diversity. After noting the historical evidence demonstrating "a congressional mandate that diversity jurisdiction is not to be available when any plaintiff is a citizen of the same State as any defendant," 437 U. S., at 374, we held that that jurisdictional requirement could not be circumvented through the exercise of pendent jurisdiction.[29]

The Court today adopts a sharply different approach. Without even so much as acknowledging our statement in *Aldinger* that before a federal court may exercise pendent-

---

[29] We stated:

"The relevant statute in this case, 28 U. S. C. § 1332(a)(1), confers upon federal courts jurisdiction over 'civil actions where the matter in controversy exceeds the sum or value of $10,000 . . . and is between . . . citizens of different States.' This statute and its predecessors have consistently been held to require complete diversity of citizenship. That is, diversity jurisdiction does not exist unless *each* defendant is a citizen of a different State from *each* plaintiff. Over the years Congress has repeatedly reenacted or amended the statute conferring diversity jurisdiction, leaving intact this rule of complete diversity. Whatever may have been the original purposes of diversity-of-citizenship jurisdiction, this subsequent history clearly demonstrates a congressional mandate that diversity jurisdiction is not to be available when any plaintiff is a citizen of the same State as any defendant." *Kroger*, 437 U. S., at 373–374.

party jurisdiction it must satisfy itself that Congress "has not expressly or by implication negated its existence," 427 U. S., at 18, it now instructs that "a grant of jurisdiction over claims involving particular parties does not itself confer jurisdiction over additional claims by or against different parties." *Ante*, at 556. This rule, the Court asserts, is necessary to provide Congress "a background of clear interpretative rules" and to avoid sowing confusion. *Ibid.* But as a method of statutory interpretation, the Court's approach is neither clear nor faithful to our judicial obligation to discern congressional intent. While with respect to the joinder of additional defendants on pendent state claims, the Court's mandate is now clear, its approach offers little guidance with respect to the many other claims that a court must address in the course of deciding a constitutional case. Because the Court provides no reason why the joinder of pendent defendants over whom there is no other basis of federal jurisdiction should differ from the joinder of pendent claims and other pendent parties,[30] I fear that its approach will confuse more than it clari-

---

[30] Consider, for example, the counterclaim cases in which the Federal Rules of Civil Procedure defined the scope of the jurisdiction granting statute in precisely the same way the Rules did in *Gibbs:*

"We conclude that, in the case of a counterclaim which is compulsory, ancillary jurisdiction should extend to additional parties, regardless of an ensuing lack of diversity. This is the position taken by the commentators, Shulman and Jaegerman, Some Jurisdictional Limitations on Federal Procedure, supra, 45 Yale L.J. 393, 418, and the few courts which have ruled on the question. Carter Oil Co. v. Wood, supra, D.C.E.D. Ill., 30 F.Supp. 875; King v. Edward B. Marks Music Corp., D.C.S.D.N.Y., 56 F.Supp. 446; and see Black v. London Assur. Co. of London, England, D.C.W.D.S.C., 122 F.Supp. 330, where the court arrived at the desired result through realignment of the parties. We ourselves have come to the same conclusion in the past on the similar issue of venue requirements for additional defendants, see Lesnik v. Public Industrials Corp., supra, 2 Cir., 144 F.2d 968, and with respect to impleader of third-party defendants under F.R. 14. Friend v. Middle Atlantic Transp. Co., 2 Cir., 153 F.2d 778, 779–780, certiorari denied 328 U. S. 865, 66 S.Ct. 1370, 90 L.Ed. 1635. A liberal attitude toward the inclusion of parties is a necessary con-

fies. How much more clear to assume—especially when the courts have long so held—that with respect to all of these situations Congress intended the Federal Rules to govern unless Congress has indicated otherwise.

The Court's focus on diversity cases may explain why it loses sight of the purpose behind the principle of pendent jurisdiction.[31] The doctrine of pendent jurisdiction rests in part on a recognition that forcing a federal plaintiff to litigate his or her case in both federal and state courts impairs the ability of the federal court to grant full relief, *Supreme Tribe of Ben-Hur* v. *Cauble*, 255 U. S. 356, 367 (1921), and "imparts a fundamental bias against utilization of the federal forum owing to the deterrent effect imposed by the needless requirement of duplicate litigation if the federal forum is chosen." *Aldinger*, 427 U. S., at 36 (BRENNAN, J., dissenting).[32] "The courts, by recognizing pendent jurisdiction, are

comitant to the liberalized third-party practice authorized by the Federal Rules of Civil Procedure. The presence of these defendants is necessary to a complete adjudication of the issues involved in this litigation, which should not be retried at another time in another forum." *United Artists Corp.* v. *Masterpiece Productions, Inc.*, 221 F. 2d 213, 217 (CA2 1955).

[31] The unwisdom of having "lumped together indiscriminately cases involving each of the three different contexts in which the question of pendent parties has been litigated" has been sufficiently criticised by Professors Wright, Miller, and Cooper. See their treatise on Federal Practice and Procedure § 3567.2, pp. 152–153 (2d ed. 1984). They explain:

"The distinctions are there and do not become less real because they are not mentioned. The meaning of 'amount in controversy' in § 1332 raises one question, the meaning of 'between citizens of different states' in the same statute raises a different question, and the permissible scope of cases 'arising under' federal law within the Constitution and § 1331 raises still a third question. The considerations for allowing 'pendent parties' in a federal question case may well be more compelling than for doing so when the only effect is to broaden the scope—and attractiveness—of diversity jurisdiction."

[32] See P. Bator, D. Meltzer, P. Mishkin, & D. Shapiro, Hart and Wechsler's The Federal Courts and The Federal System 1046 (3d ed. 1988); Fortune, Pendent Jurisdiction—The Problem of "Pendenting Parties," 34 U. Pitt. L. Rev. 1, 12 (1972); Mishkin, The Federal "Question" in the Dis-

effectuating Congress' decision to provide the plaintiff with a federal forum for litigating a jurisdictionally sufficient claim." Miller, Ancillary and Pendent Jurisdiction, 26 S. Tex. L. J. 1, 4 (1985). This is especially the case when, by virtue of the grant of exclusive federal jurisdiction, *"only in a federal court may all of the claims be tried together."* *Aldinger*, 427 U. S., at 18. In such circumstances, in which Congress has unequivocally indicated its intent that the federal right be litigated in a federal forum, there is reason to believe that Congress did not intend that the substance of the federal right be diminished by the increased costs in efficiency and convenience of litigation in two forums. Cf. *Moses H. Cone Memorial Hospital* v. *Mercury Construction Corp.*, 460 U. S. 1, 25 (1983); *Will* v. *Calvert Fire Ins. Co.*, 437 U. S. 655, 673–675 (1978) (BRENNAN, J., dissenting).[33] No such special federal interest is present when federal jurisdiction is invoked on the basis of the diverse citizenship of the parties and the state-law claims may be litigated in a state forum. See *Owen Equipment & Erection Co.* v. *Kroger*, 437 U. S., at 376; Currie, The Federal Courts and the American Law Institute, 36 U. Chi. L. Rev. 1, 21 (1968).[34] To be sure "[w]hatever we say regarding the scope of jurisdiction conferred by a particular statute can . . . be changed by Con-

trict Courts, 53 Colum. L. Rev. 157, 167 (1953); Schenkier, Ensuring Access to the Federal Courts: A Revised Rationale for Pendent Jurisdiction, 75 Nw. U. L. Rev. 245, 254–256 (1980).

[33] See also *Musher Foundation* v. *Alba Trading Co.*, 127 F. 2d 9, 11 (CA2 1942) (Clark, J., dissenting) ("If the roast must be reserved exclusively for the federal bench, it is anomalous to send the gravy across the street to the state court house").

[34] "The continued need for exercise of diversity jurisdiction, at least where a showing of prejudice is not made, has been challenged by respected authorities. But a sharply different view has been taken of the federal-question jurisdiction, and the Court has reflected that view in its decisions upholding the exercise of jurisdiction over pendent claims under state law." *Zahn* v. *International Paper Co.*, 414 U. S. 291, 304, n. 5 (1973) (BRENNAN, J., dissenting).

gress," *ante*, at 556, but that does not relieve us of our responsibility to be faithful to the congressional design. The Court is quite incorrect to presume that because Congress did not sanction the exercise of pendent-party jurisdiction in the diversity context, it has not permitted its exercise with respect to claims within the exclusive federal jurisdiction.

Finally, the Court seeks to draw support from *United States* v. *Sherwood*, 312 U. S. 584 (1941), a case that involved a narrow issue[35] and a narrow construction of the jurisdiction conferred by the Tucker Act.[36]  The Court's holding was based partly on the special history of the Court of Claims, see *id.*, at 587, and partly on the view that the sovereign's consent to be sued "must be strictly interpreted," *id.*, at 590. Fortunately, after the enactment of the FTCA in 1946, the Court took a much more enlightened view of the waiver of sovereign immunity effected by that statute.  Thus, in its decision upholding jurisdiction of a claim against the United States for contribution—incidentally, a claim that was not expressly covered by the Act—the Court wrote:

> "This brings the instant cases within the principle approved in *United States* v. *Aetna Surety Co.*, 338 U. S. 366, 383:
> "'In argument before a number of District Courts and Courts of Appeals, the Government relied upon the doctrine that statutes waiving sovereign immunity must be strictly construed.  We think that the congressional attitude in passing the Tort Claims Act is more accurately reflected by Judge Cardozo's statement in *Anderson* v.

---

[35] The Court held that the Tucker Act should not be construed to give the consent of the United States to be sued in effect as a postjudgment garnishee on a claim that in the hands of the judgment debtor would not be within its jurisdiction.

[36] Professor Moore convincingly argues that the *Sherwood* decision is based on an unsound and outdated application of the maxim that sovereign consent to be sued must be strictly construed.  See 3A J. Moore, J. Lucas, & G. Grotheer, Moore's Federal Practice ¶ 20.07(3), pp. 20–55 to 20–58 (2d ed. 1987).

*Hayes Construction Co.*, 243 N. Y. 140, 147, 153 N. E. 28, 29–30: "The exemption of the sovereign from suit involves hardship enough where consent has been withheld. We are not to add to its rigor by refinement of construction where consent has been announced." '

"Once we have concluded that the Federal Tort Claims Act covers an action for contribution due a tort-feasor, we should not, by refinement of construction, limit that consent to cases where the procedure is by separate action and deny it where the same relief is sought in a third-party action. As applied to the State of New York, Judge Cardozo said in language which is apt here: 'No sensible reason can be imagined why the State, having consented to be sued, should thus paralyze the remedy.' 243 N. Y. at 147, 153 N. E. at 29. 'A sense of justice has brought a progressive relaxation by legislative enactments of the rigor of the immunity rule. As representative governments attempt to ameliorate inequalities as necessities will permit, prerogatives of the government yield to the needs of the citizen. . . . When authority is given, it is liberally construed.' *United States* v. *Shaw*, 309 U. S. 495, 501." *United States* v. *Yellow Cab Co.*, 340 U. S. 543, 554–555 (1951).[37]

---

[37] See also *Larson* v. *Domestic & Foreign Commerce Corp.*, 337 U. S. 682, 709 (1949) (Frankfurter, J., dissenting) ("In the course of a century or more a steadily expanding conception of public morality regarding 'governmental responsibility' has led to a 'generous policy of consent for suits against the government' to compensate for the negligence of its agents as well as to secure obedience to its contracts"); *Great Northern Life Ins. Co.* v. *Read*, 322 U. S. 47, 59 (1944) (Frankfurter, J., dissenting) ("[C]onsent does not depend on some ritualistic formula. Nor are any words needed to indicate submission to the law of the land. The readiness or reluctance with which courts find such consent has naturally been influenced by prevailing views regarding the moral sanction to be attributed to a State's freedom from suability. Whether this immunity is an absolute survival of the monarchial privilege, or is a manifestation merely of power, or rests on abstract legal grounds, it undoubtedly runs counter to modern democratic notions of the moral responsibility of the State. Accordingly,

Today we should be guided by the wisdom of Cardozo and Friendly rather than by the "unnecessarily grudging" approach that was unanimously rebuffed in *Gibbs*. See 383 U. S., at 725.

I respectfully dissent.

---

courts reflect a strong legislative momentum in their tendency to extend the legal responsibility of Government and to confirm Maitland's belief, expressed nearly fifty years ago, that 'it is a wholesome sight to see "the Crown" sued and answering for its torts' ").