**In re AIR DISASTER IN LOCKERBIE, SCOTLAND, ON DECEMBER 21, 1988.**

**MDL No. 799.**

United States District Court, E.D. New York.

Jan. 3, 1990.

Plaintiffs' Committee, Lee S. Kreindler, Chairman, Steven R. Pounian, James P. Kreindler, Kreindler & Kreindler, Michael F. Baumeister, Frank H. Granito, Jr., Frank H. Granito III, New York City, Stanley Chesley, Cincinnati, Ohio, Nicholas Gilman, Washington D.C., Richard Brown, San Francisco, Cal., for plaintiffs.

Anthony Dean, James M. Shaughnessy, Laura Longobardi, Windels, Marx, Davies & Ives, New York City, for defendants.

## MEMORANDUM AND ORDER

PLATT, Chief Judge.

Defendants, Pan American World Airways, Inc. ("Pan Am"), Alert Management Systems, Inc. ("Alert"), Pan Am World Services ("PAWS"), and Pan Am Corporation ("Pan Am Corp.") move for partial summary judgment dismissing all punitive damage claims on the ground that punitive damages are barred by the Warsaw Convention.[1] In response, plaintiffs argue that the Warsaw Convention does not bar punitive damage claims and, if this Court were to hold that the Warsaw Convention bars punitive damages, then plaintiffs should be allowed additional discovery in order to demonstrate that plaintiffs' claims against defendants Alert and PAWS are not governed by the Warsaw Convention.

## RELEVANT FACTS

On December 21, 1988, Pan Am Flight 103 crashed near Lockerbie, Scotland. Flight 103 originated at Frankfurt Main Airport in Frankfurt, West Germany, and flew non-stop to Heathrow Airport in London, England. After stopping at Heathrow Airport, the flight departed for New York's John F. Kennedy International Airport. At

---

1. Convention for the Unification of Certain Rules Relating to International Transportation by Air, Oct. 12, 1929, 49 Stat. 3000, T.S. No. 876 (1934), *reprinted* in Note following 49 U.S.C. App. § 1502.

approximately 7:19 p.m. Greenwich mean time, the aircraft exploded in midair and crashed near Lockerbie, Scotland. On the plane were 45 passengers who boarded in Frankfurt, 198 passengers who boarded in London and 16 crew members. All 259 persons died on board.

Survivors of the victims filed suit against Pan Am, PAWS, Alert, and Pan Am Corp. in several Federal District Courts. On April 4, 1989, the Judicial Panel on Multidistrict Litigation, pursuant to 28 U.S.C. § 1407, transferred all suits brought by the decedents' representatives to the undersigned in the Eastern District of New York for consolidated pretrial proceedings, 709 F.Supp. 231.

In these suits, plaintiffs assert claims against defendant Pan Am seeking compensatory damages for defendant's wilful misconduct and breach of contract and punitive damages for defendant's wilful misconduct. The complaints assert that federal subject matter jurisdiction over these claims exists on the basis of 28 U.S.C. § 1331 and the Warsaw Convention.

Plaintiffs also assert claims against defendants PAWS and Alert seeking compensatory and punitive damages for defendants' negligence and wilful misconduct. Subject matter jurisdiction over these claims is based on the federal court's pendent or ancillary jurisdiction.

## DISCUSSION

Because plaintiffs maintain that additional discovery is needed in order to determine whether defendants Alert and PAWS are governed by the Warsaw Convention, this Court will only address the issue of wheth-er the Warsaw Convention bars punitive damage claims.[2]

Defendants argue that the Warsaw Convention in Article 17 limits the right of recovery to compensatory damages only and any exclusion from limitation provided in Article 25 is an exception to the monetary limit on the recovery of compensatory damages. According to defendants, Article 25 does not authorize the recovery of any damages other than compensatory.[3]

In response, plaintiffs present a two fold argument. First, they contend that the Warsaw Convention provides that a number of issues including punitive damage claims are to be determined according to the law of the forum State; thus, punitive damage claims are only barred under the Warsaw Convention when barred by local law. Second, plaintiffs argue that even if the Warsaw Convention generally bars punitive damage claims, Article 25 provides that when wilful misconduct exists, the liability limits of the Warsaw Convention are inapplicable and thus if wilful misconduct exists plaintiffs' punitive damage claims should be determined by referring to local law.

While the Warsaw Convention does not expressly refer to punitive damage claims, it appears that the Warsaw Convention bars such claims whether or not wilful misconduct exists. The Supreme Court has recently explained that, in interpreting the Warsaw Convention, courts are obligated "to give the specific words of the treaty *a meaning consistent with the shared expectations of the contracting parties." Air France v. Saks,* 470 U.S. 392, 399, 105 S.Ct. 1338, 1342, 84 L.Ed.2d 289 (1985) (emphasis added).

2. If defendants PAWS and Alert are not governed by the Warsaw Convention, it is doubtful that this Court has subject matter jurisdiction over those plaintiffs who lack diversity. The recent Supreme Court decision of *Finley v. U.S.,* —— U.S. ——, 109 S.Ct. 2003, 104 L.Ed.2d 593 (1989), held that no pendent party jurisdiction existed over the San Diego Gas and Electric Company and the city of San Diego despite the fact that the plaintiffs had sued the defendant, the United States, in federal court pursuant to the Federal Torts Claims Act which grants the federal courts exclusive jurisdiction over such claims. Thus, it is certainly questionable whether this Court's jurisdiction over Pan Am pursuant to the Warsaw Convention would give this Court pendent party jurisdiction over PAWS or Alert.

3. Defendants maintain that if Article 25 applies to plaintiffs, then plaintiffs may be entitled to full compensatory damages rather than the mere $75,000 provided in Article 22 as modified by the Montreal Agreement but plaintiffs are never entitled to punitive damages.

The primary shared expectation of the contracting parties was to set some uniform limit on an airline carrier's liability in order to promote the civil aviation industry which at the time of the Warsaw Convention was in its infancy. *See Trans World Airlines, Inc. v. Franklin Mint Corp.*, 466 U.S. 243, 256, 104 S.Ct. 1776, 1784–85, 80 L.Ed.2d 273 (1984); *Reed v. Wiser*, 555 F.2d 1079, 1089 (2d Cir.1977); *Floyd v. Eastern Airlines, Inc.*, 872 F.2d 1462, 1467 (11th Cir.1989); Andreas Lowenfeld and Allan I. Mendelsohn, *The United States and The Warsaw Convention*, 80 Harv.L.Rev. 497, 499 (1967). This primary goal is clearly evidenced by Secretary of State Cordell Hull's transmittal of the Warsaw Convention to the United States Senate. Secretary of State Hull wrote:[4]

It is believed that the principle of limitation of liability will not only be beneficial to passengers and shippers as affording a more definite basis of recovery and as tending to lessen litigation, but that it will prove to be an aid in the development of international air transportation, as such limitation will afford the carrier a more definite and equitable basis on which to obtain insurance rates, with the probable result that there would eventually be a reduction of operating expenses for the carrier and advantages to travelers and shippers in the way of reduced transportation charges.

Since the application of local law to punitive damage claims would be inconsistent with the primary goal of the Warsaw Convention, this Court may not find that the treaty's mere silence authorized punitive damage claims to be governed by local law; in order for a court to find that a provision inconsistent with the entire scheme of the Warsaw Convention exists, the provision would have to be express and explicit.[5] *See Floyd.*

Plaintiffs maintain that the Warsaw Convention in Article 24 does expressly provide for local law to be applied to any punitive damage claim. Article 24 states:

(1) In cases covered by articles 18 and 19 any action for damages, however founded, can only be brought subject to the conditions and limits set out in this convention.

(2) In the cases covered by article 17 the provisions of the preceding paragraph shall also apply, without prejudice to the questions as to who are the persons who have the right to bring suit and what are their respective rights.[6]

Plaintiffs ask this Court to read the provision in paragraph (1) stating that "any actions for damages, *however founded*, can only be brought subject to the conditions and limits set out in this convention" in combination with provision in paragraph (2) stating that actions under Article 17 be brought subject to the convention *"without prejudice to the questions as to who are the persons who have the right to bring suit and what are their respective rights."* (emphasis added). They argue that by the

4. *Senate Comm. on Foreign Relations, "Message from the President of the United States Transmitting a Convention for the Unification of Certain Rules", Sen. Exec. Doc. No. G, 73rd Cong., 2d Sess. 3–4 (1934).*

5. At one point, plaintiffs suggest that since the Warsaw Convention expressly states that questions of procedure, the effect of contributory negligence, and the method of calculating the statute of limitations are to be determined by looking at local law, it is probable that the Warsaw Convention also intended to leave punitive damage claims to local law even if it was silent on the issue. Plaintiffs contend that this argument is supported by the fact that many of the signing nations allowed for various types of punitive damage claims. However, that the Warsaw Convention was silent on whether punitive damage claims should be governed by local law while expressly providing for those other issues to be determined by reference to local law actually runs against the argument that the Warsaw Convention intended punitive damage claims to be governed by local law. Because the application of various local laws to punitive damage claims would be a greater hindrance to the Warsaw Convention's primary goal of uniform and limited liability than the application of local laws to the questions of procedure, contributory negligence, or the statute of limitations, it seems the Warsaw Convention would have certainly expressly provided if punitive damage claims were to be governed by local laws.

6. Article 18 provides a cause of action for damage to property while Article 17 provides a cause of action for death or bodily injury.

combination of these two provisions the Warsaw Convention provided that punitive damage claims would be determined by reference to local law.

However, Article 24 actually seems to be persuasive evidence that the Warsaw Convention intended to bar punitive damage claims. The provision in paragraph (1) that actions "however founded" be "subject to the conditions and limits set out by this convention" appears to emphasize the Warsaw Convention's intent that all actions be governed by the Warsaw Convention's uniform limit of liability and thus actually precludes any other actions including those founded in State law. The Eleventh Circuit, in *Floyd v. Eastern Airlines, Inc.*, employed similar reasoning in addressing the issue of whether a State cause of action for punitive damages was preempted by the Warsaw Convention. There, the Court held that despite the Warsaw Convention's silence on the subject, the plaintiffs could not bring punitive damage claims under State law because Article 24 of the Convention required the Court to determine whether such a State cause of action would be within the "conditions and limits set out in this convention" and a State cause of action for punitive damages would directly contravene the liability limits set out in the treaty. *Floyd*, at 1480–1481.

■ The provision that "all actions *however founded* be brought subject to the conditions and limits of the convention" is unaltered by the provision in paragraph (2) that "in cases covered by Article 17 the provisions of the preceding paragraph shall also apply *without prejudice as to who are persons who have the right to bring suit and what are their respective rights*".- (emphasis added). Plaintiffs maintain that if the provision that all actions however founded be subject to the Warsaw Convention is considered together with the natural meaning of paragraph (2), Article 24 actually authorizes punitive damage claims to be governed by local law. However, the natural meaning of paragraph (2) seems to be additional evidence that the Warsaw Convention does not allow for any punitive damage claims. It expressly states that even actions for personal injury and death, governed by Article 17, must comply with the conditions and limits of the Warsaw Convention. Further, it seems quite obvious that the natural meaning of the "without prejudice" clause is that the Warsaw Convention would not interfere with local laws of descent and distribution; the "without prejudice" clause of Article 24 simply provides that the limited amount obtained under the Warsaw Convention would be distributed between heirs and next of kin according to local law.

Plaintiffs next argue that even if Article 24 does not authorize punitive damage claims brought under the Warsaw Convention to be generally governed by reference to local law, Article 25 authorizes punitive damage claims to be governed by local law in cases where wilful misconduct exists. According to plaintiffs, Article 25 provides that the airline loses the benefit of anything in the Warsaw Convention that excludes or limits liability when wilful misconduct exists.

Article 25 explicitly provides that "the carrier shall not be entitled to avail himself of the provisions of this convention which exclude or limit his liability if the damage is caused by his wilful misconduct." Plaintiffs maintain that the drafters intended to deter wilful misconduct and thus both the specific monetary limit provided by the Warsaw Convention and the Warsaw Convention's general scheme that only compensatory damages would be provided are disallowed where wilful misconduct exists. Taken alone, the language in Article 25 may be interpreted to mean that one who engaged in wilful misconduct would not benefit from either the specific monetary limit set by the Warsaw Convention or the general plan to limit liability to compensatory damages.

■ However, as the Eleventh Circuit noted in *Floyd v. Eastern Airlines, Inc.*, "minutes of the negotiations on the Hague Protocol, an amendment to the Convention, indicate that the delegates understood article 25 as referring only to article 22 which establishes monetary limits for recoveries under the Convention." *Floyd*, at 1483

(the *Floyd* Court held that Article 25 did not provide an independent cause of action for punitive damage claims); *see also* H. Drion, *Limitation of Liabilities in International Air Law* 70, 260–61 (1954). Moreover, since allowing the application of various punitive damage laws would defeat the Warsaw Convention's primary goal of uniform and limited liability, Article 25 may not be interpreted as authorizing an independent cause of action for punitive damage claims and be consistent with the shared expectations of the parties. It seems more likely that if the parties intended that carriers which engaged in wilful misconduct would be subject to punitive damage claims, Article 25 would have provided that the entire Warsaw Convention, rather than just certain provisions, was inapplicable in such cases. Since Article 25 does not provide an independent cause of action for punitive damage claims, plaintiffs who brought their suit under the Warsaw Convention must resort to Article 17 which provides the cause of action for death or bodily injury under the Warsaw Convention.[7] *See Benjamins v. British European Airways*, 572 F.2d 913, 916 (2d Cir.1978) (the Court reversed previous Second Circuit caselaw and held that Article 17 created a cause of action).

Since Article 17 provides plaintiffs' cause of action, plaintiffs may not obtain punitive damages even if wilful misconduct exists. The official American translation of Article 17, which was before the Senate when it ratified the Convention in 1934, reads:

> "The carrier shall be liable for damage sustained in the event of the death or wounding of a passenger or any other bodily injury suffered by a passenger, if the accident which caused the damage so sustained took place on board the aircraft or in the course of any operations of embarking or disembarking." 49 Stat. 3018.

Plaintiffs argue that "damage sustained" is an incorrect translation of the original French phrase "du dommage survenu."[8] According to plaintiffs, the proper translation of the French "dommage survenu" is damage which "happened" or "arose" and such a translation would allow for punitive damage claims.[9]

The Eleventh Circuit, in *Floyd*, held that "dommage survenu" is accurately translated as "damage sustained"[10] and that puni-

---

**7.** While plaintiffs with diversity may attempt to bring a punitive damage suit under a State law cause of action, the Eleventh Circuit in *Floyd*, supra, held that Article 24 of the Warsaw Convention requires that a State cause of action for punitive damages is precluded by the Warsaw Convention.

**8.** The French text of Article 17 reads:

"Le transporteur est responsable du dommage survenu en cas de mort, de blessure ou de toute autre lesion corporelle subie par un voyageur lorsque l'accident qui a cause le dommage s'est produit a bord de l'aeronef ou au cours de toutes operations d'embarquement et de debarquement."

**9.** Plaintiffs maintain that if there is a conflict between the original French and the accepted English translation, the original French governs. While the Supreme Court has indicated that the original French would govern over a long accepted but improper English translation, it has explained that this is not because " 'we are forever chained to French law' but because it is our responsibility to give the specific words of the treaty a meaning consistent with the shared expectations of the contracting parties." *Air France v. Saks*, 470 U.S. 392, 399, 105 S.Ct. 1338,

1342, 84 L.Ed.2d 289 (*quoting Rosman v. Trans World Airlines, Inc.*, 34 N.Y.2d 385, 358 N.Y.S.2d 97, 314 N.E.2d 848 (1974)). Therefore, in light of the Warsaw Convention's primary goal that carrier liability be uniform and limited, it seems highly unlikely that "du dommage survenu" may be interpreted in a manner which would allow for punitive damage suits. In support of their argument that the proper translation of "du dommage survenu" would allow for punitive damage claims, plaintiffs again point out that at the time of the Warsaw Convention, many countries allowed for various types of punitive damage claims. However, as stated above, that many of the signing nations allowed for varying punitive damage claims only further supports the position that a treaty which intended to establish a uniform limited liability precluded these local laws from applying.

**10.** The Court noted that the official English translation adopted at The Hague in 1955, the United States State Department translation which accompanied the Convention when it was ratified by the Senate, and the Guatemala Protocol all used the "damage sustained" language. *Floyd*, at 1487 (*citing* 49 U.S.C. note following § 1502 (American translation), Kreindler, *Aviation Law Documents* Supp. at 955, 975 (official English translation, Guatemala Protocol)).

tive damages are not damages sustained but rather an award, over and above what is necessary to compensate a plaintiff for damage sustained, designed to punish a defendant for his conduct and to deter others from engaging in similar conduct in the future. *Floyd,* at 1486–1487. (*citing In re Air Crash Disaster at Gander, Newfoundland,* 684 F.Supp. 927, 931 (W.D.Ky.1987) (*citing International Brotherhood of Electrical Workers v. Foust,* 442 U.S. 42, 48, 99 S.Ct. 2121, 2125–26, 60 L.Ed.2d 698 (1979); *Gertz v. Robert Welch, Inc.,* 418 U.S. 323, 94 S.Ct. 2997, 41 L.Ed.2d 789 (1981); Prosser and Keeton on Torts § 2 at 9–15 (5th ed. 1984))).

▆▆▆ Plaintiffs nonetheless argue that the *Floyd* Court erred in not recognizing that the original French phrase "du dommage survenu" is more properly translated as damage which "happened" or "arose". In this Court's own survey of French–English dictionaries, "survenir" was found to be most frequently translated as "to happen", "to arise", or "to arrive unexpectedly".[11] However, even if "du dommage survenu" is translated as damage happened or arisen, Article 17 does not allow for punitive damage claims. Under a literal translation, Article 17 would provide that the transporter or carrier is responsible for damage, not damages, happened or arisen in the case of death, wounding, or any other bodily injury if the accident which caused the damage, not damages, took place on board. "Damage" in the context of Article 17 is damage or injury sustained, happened or arisen to the body or mind of the passenger, not monetary damages, and hence, regardless of whether "survenu" is translated as sustained or happened or arisen, Article 17 does not allow for punitive damage claims. *See accord Air France v. Saks,* 470 U.S. 392, 105 S.Ct. 1338, 84 L.Ed.2d 289 (1985) (while the issue before the Court in *Air France* was the translation of the term "accident" in Article 17, the Court clearly indicated that the term "damage" in Article 17 was the equivalent of injury). This interpretation is confirmed by the language in Article 18 which clearly states that the damage referred to is damage to baggage.[12] Moreover, if Article 17 was referring to monetary damages, at the very least dommage would be in its plural rather singular form and it is more likely that the phrase "in actions for damages" would have been used as was done in Article 24. Thus, when Article 25 is read together with Article 17 which provides plaintiffs' cause of action, it is clear that Article 25 does not authorize punitive damage claims even if wilful misconduct exists.

## CONCLUSION

While need to encourage the airline industry's growth may now be obsolete,[13] it is only the political branches which have the power to repudiate or amend the Warsaw Convention. *See Floyd; Trans World Airlines, Inc. v. Franklin Mint Corp.,* 466 U.S. 243, 261, 104 S.Ct. 1776, 1787, 80 L.Ed.2d 273 (1984). In its most recent ruling on the Warsaw Convention, the Supreme Court once again admonished the courts that to "alter, amend, or add to any treaty would be ... an usurpation of power, and not an exercise of judicial func-

**11.** This Court referred to *Harrat's New Standard French and English Dictionary,* by J.E. Mansion, *Collins–Robert French–English English–French Dictionary,* by Beryl T. Atkins, and *A French–English English–French Vocabulary of Legal Terms And Phrases,* by Jules Jereaute.

**12.** Article 18 provides that "the carrier shall be liable for damage sustained in the event of the destruction or loss of or of damage to, any checked baggage or any goods if the occurrence which caused the damage so sustained took place during the transportation by air."

**13.** It may also be that the continued existence of the law of limited liability may not be wholly without any rational basis. A number of inter-

national airlines may be wholly owned by sovereign governments which might well not consent to being sued for punitive damages and if private carriers were subject to such damage suits they might be placed at a substantial competitive disadvantage. The treaty does provide for a carrier's liability to the extent of $75,000 for damage sustained as a result of an accident, *see Air France,* supra, and unlimited liability for damage sustained as a result of wilful misconduct. Also the treaty does not preclude passengers from purchasing at their own expense additional coverage which is readily available in almost all airports.

tions".[14]  *Chan v. Korean Air Lines, Ltd.,* —— U.S. ——, 109 S.Ct. 1676, 104 L.Ed.2d 113 (1989) (*quoting The Amiable Isabella,* 6 Wheat 1, 71, 5 L.Ed. 191 (1821)) (the issue before the court in Chan was whether carriers lost the benefit of the limitation on damages if they failed to provide notice of the limitation in 10–point type size).  Therefore, in interpreting the Warsaw Convention in the only manner consistent with the shared expectations of the contracting parties at the time, this Court is compelled to hold that the Warsaw Convention bars plaintiffs' punitive damage claims whether or not wilful misconduct exists.

SO ORDERED.

---

**14.**  While no monetary figure may ever alleviate the loss suffered by the families of the 259 innocent victims on board Flight 103, it seems quite obvious to this Court that in today's world the figure provided by the Warsaw Convention adds insult to injury.  However, this Court's duty is to interpret the treaty in a manner consistent with the parties expectations and to apply it where it governs.  It is simply not within this Court's power to construe the treaty in a manner inconsistent with the contracting parties expectations.