TORRUELLA, Circuit Judge
(Concurring in part, dissenting in part II.B).
I concur in part II.A of the majority opinion. I also agree that courts are wise to tread carefully when deciding cases, such as this, where a court must interpret a statute defining the parameters of its own powers. My agreement with the majority opinion, however, ends there.
In an attempt to limit diversity jurisdiction, the majority opinion mixes a “sympathetic textualist” approach to statutory interpretation with a dash of legislative intent to reach a conclusion that is contrary to the plain language of § 1367. The irony of the majority opinion is that it espouses the virtue of legislative intent, yet adopts a reading of § 1367 that was never articulated by any Congressperson or their staff, by any judge or jurist, nor by any academics, or, most importantly, by any of the very drafters of the statute from the time the statute was adopted in 1990, until such “intent” was just espoused in 1998. Section 1367 was the law for over seven years before a new alternative interpretation of § 1367 was proposed by Professor Pfander and adopted by the Tenth Circuit. See Leonhardt v. W. Sugar Co., 160 F.3d 631, 639 n. 6 (10th Cir.1998). This dubious approach has now been adopted by this circuit, despite the fact that it ignores the plain meaning of § 1367, causes the same word in the statute to have two meanings, and *145 makes an entire provision of § 1367 meaningless.
It is because I believe that a court’s role is limited to applying the statute, not changing the statute, that I respectfully dissent. In doing so, I join the majority of our sister circuits that have interpreted 28 U.S.C. § 1367 to grant a district court jurisdiction to hear a plaintiff’s claim that does not meet the amount-in-controversy, if a co-plaintiffs claim satisfies the amount-in-controversy requirement.
I. Joinder and class actions
Before analyzing § 1367 and its meaning, one observation must be made. The majority begins its analysis of § 1367 by noting that our sister circuits are evenly split on the issue of whether § 1367 allows a plaintiff who does not independently meet the amoimt-in-controversy requirement of § 1332 to remain in federal court. This statement is misleading. While it is true that only two circuit courts, the Third and Seventh Circuits, have addressed § 1367’s applicability outside the context of a class action, in reality, five circuit courts have interpreted § 1367 to allow a plaintiff who does not independently meet the amount-in-controversy requirement of § 1332 to remain in federal court, whereas three circuit courts require them to take their claims to state court.[21] Rather than addressing these cases and their arguments, the majority opinion casts them aside by arguing that the class action context differs from the Rule 20 joinder context. Such a characterization is misguided for several reasons.
First, the majority opinion fails to acknowledge that for § 1367 purposes, Clark and Zahn stand for the same principle. In Clark v. Paul Gray, Inc., the Supreme Court held that each plaintiffs claim must meet the amount-in-controversy requirement. 306 U.S. 583, 59 S.Ct. 744, 83 L.Ed. 1001 (1939). In Zahn v. Int’l Paper Co., the Supreme Court held that each class member’s claim must meet the amount-in-controversy requirement. 414 U.S. 291, 301, 94 S.Ct. 505, 38 L.Ed.2d 511 (1973). Thus, Clark “is the nonclass analog to Zahn. Section 1367, on its face, overrules Clark, just as it overrules Zahn.” Richard D. Freer, The Cauldron Boils: Supplemental Jurisdiction, Amount in Controversy, and Diversity of Citizenship Class Actions, 53 Emory L.J. 55, 58 n. 19 (2004).
This position has been adopted by every circuit court to consider the issue. As the Seventh Circuit noted, “ § 1367 does not distinguish class actions from other cases ... [and section 1367] affects Clark and Zahn equally.” Stromberg Metal Works, 77 F.3d at 931.[22] Similarly, the Third Cir *146 cuit, the only circuit with which the majority aligns itself, admits that “the line of cases from Pinel to Zahn applies equally to joinder cases and class action.” Meritcare Inc., 166 F.3d at 218.[23] The purpose of Zahn was to clarify that, for amount-in-controversy purposes, the proposition established in Clark applies in the class action context. See Zahn, 414 U.S. at 301, 94 S.Ct. 505; Snyder v. Harris, 394 U.S. 332, 335-37, 89 S.Ct. 1053, 22 L.Ed.2d 319 (1969) (treating class actions the same as cases with joined plaintiffs for purposes of aggrégation rules).
Second, if a distinction were to be made between class actions and joinder, the distinction would favor allowing supplemental jurisdiction in joinder situations, and not in class action situations, as “it is hard to avoid remarking that allowing thousands of small claims into federal court via the class device is a substantially greater expansion of jurisdiction than is allowing a single pendent party.” Stromberg Metal Works, 77 F.3d at 931. Thus, it is “easy to imagine wanting to overturn Clark but not Zahn; it is much harder to imagine wanting to overturn Zahn but not Clark, and we have no reason to believe that Congress harbored such a secret desire.” Id.
II. The plain meaning of § 1367
When interpreting a statute, the starting point is the statute’s text. See Bennett v. City of Holyoke, 362 F.3d 1, 9 (1st Cir.2004). Section 1367(a) provides that district courts shall have supplemental jurisdiction over claims that form part of the same case or controversy as any civil action of which the court has original jurisdiction.[24] For diversity purposes, a district court has original jurisdiction if the plaintiffs citizenship differs from the defendant’s and the claim exceeds $75,000. See 28 U.S.C. § 1332.
Section 1367(b) creates exceptions to § 1367(a) if (1) jurisdiction is based on diversity (§ 1332), (2) the plaintiff is the party seeking to assert supplemental jurisdiction against persons made parties under Rule 14 (third-party practice), 19 (mandatory joinder), 20 (permissive joinder), or 24 (intervention) of the Federal Rules of Civil Procedure or persons proposed to be joined as plaintiffs or intervene as plaintiffs under Rules 19 and 24 respectively, and exercising jurisdiction over the supplemental claims would be inconsistent with the statutory requirements of diversity jurisdiction under § 1332.[25]
*147 Section 1367(c) creates further exceptions, notably awarding a district court discretion to decline supplemental jurisdiction if the supplemental jurisdiction claim predominates over the claim that has original jurisdiction.[26]
Applying § 1367(a) to the present case is straightforward. Before supplemental jurisdiction can apply, a district court must have original jurisdiction over a claim. In this case, the district court has jurisdiction over Beatriz’s claims because Beatriz is a citizen of a different state than Star-Kist and has alleged claims for which it is not a legal certainty that the damages are less than $75,000. See 28 U.S.C. § 1332. Since the district court has jurisdiction over Beatriz’s claims, it may assert supplemental jurisdiction over Beatriz’s family members’ claims if they arise out of the same case or controversy. See 28 U.S.C. § 1367(a). There is no dispute that all of the claims in this case arise out of the same case or controversy.
Supplemental jurisdiction may attach unless one of the exceptions applies. See 28 U.S.C. § 1367(b) & (c). The exceptions pertaining to Federal Rule of Civil Procedure 14 (third-party practice), Rule 19 (mandatory joinder), Rule 20 (permissive joinder), or Rule 24 (intervention) are inapplicable to this case as there are no claims by plaintiffs against persons made parties under those rules. The further exception pertaining to Federal Rule of Civil Procedure 19 does not apply as Beatriz’s family members are not indispensable parties. The last exception pertaining to Federal Rule of Civil Procedure Rule 24 does not apply as the family members are not seeking to intervene. Thus, none of the exceptions in § 1367(b) apply.
The exceptions in § 1367(c) also do not apply. The claims of Beatriz’s family members do not raise novel or complex issues of Commonwealth law, their claims do not substantially predominate Beatriz’s claims, and there do not tend to be any compelling reasons for declining jurisdiction. Thus, a plain, straightforward reading of § 1367 results in the district court having jurisdiction over Beatriz’s family members’ claims.
III. The majority opinion’s alternative approach
The majority opinion disagrees with this conclusion, however, by arguing that the term “original jurisdiction” in § 1367(a) has two distinct meanings. In federal-question cases, § 1367 applies if at least one claim qualifies for “original jurisdiction.” But, in diversity cases, the majority argues, § 1367 applies only if all claims qualify for original jurisdiction. This contrived reading of § 1367 is wrong for several reasons.
First, the majority’s interpretation of § 1367(a) violates “the basic canon of statutory construction that identical terms within an Act bear the same meaning.” Estate of Cowart v. Nicklos Drilling Co., 505 U.S. 469, 479, 112 S.Ct. 2589, 120 L.Ed.2d 379 (1992). In this case, not only does the majority opinion define identical terms differently, it defines the same term differently. There is “nothing in the text of subsection (a) to suggest, even remotely, *148 that there is such a difference in meaning.” See Gibson, 261 F.3d at 936; Rosmer, 263 F.3d at 115-16.
The majority opinion appears to be oblivious to this blatant violation of the rules of statutory construction because it believes Congress “presumptively incorporated into § 1367 the longstanding, judicially developed doctrines that determine whether those statutes confer ‘original jurisdiction.’ ” (emphasis added). In addition to there being no authority for this “presumption,” the majority incorrectly applies another longstanding doctrine that accompanies original jurisdiction to reach that conclusion. For supplemental jurisdiction purposes, the majority contends that the term “original jurisdiction” in a diversity case requires that every claim meet the requirement of “original jurisdiction.” In stating this principle, the majority overlooks the process by which a court determines if “original jurisdiction” exists. Both §§ 1331 and 1332 “confer original jurisdiction over designated ‘civil actions’ ... [which] consist of a cluster of claims, ... [and which] the rules of federal subject-matter jurisdiction apply on a claim-by-claim basis.” John B. Oakley, Integrating Supplemental Jurisdiction and Diversity Jurisdiction: A Progress Report on the Work of the American Law Institute, 74 Ind. L.J. 25, 41-42 (1998); see also Freer, 53 Emory L.J. at 82-83. One claim’s failure to qualify for original jurisdiction does not mean that all claims fail to qualify for original jurisdiction. Whether the case is filed in federal court or removed to federal court, “it is incontrovertible that [§ 1332] ... requires only the dismissal of the jurisdictionally insufficient claims, not the entire action.” Oakley, 74 Ind. L.J. at 47; Freer, 53 Emory L.J. at 82-83; see also Clark, 306 U.S. at 590, 59 S.Ct. 744 (maintaining jurisdiction over one claim that met the amount-in-controversy and dismissing the claims that failed to meet the amount-in-controversy). Thus, the fact that a case contains claims that destroy diversity does not prevent the court from maintaining jurisdiction over the claims that qualify for “original jurisdiction.” See Oakley, 74 Ind. L.J. at 47; Clark, 306 U.S. at 590, 59 S.Ct. 744; see also Fed.R.Civ.P. 21; Newman-Green, Inc. v. Alfonzo-Larrain, 490 U.S. 826, 834-35, 109 S.Ct. 2218, 104 L.Ed.2d 893 (1989) (holding that courts of appeals have the authority to dismiss a dispensable non-diverse party).
The very language of § 1367 incorporates this concept. Section 1367(a) states that a court shall have supplemental jurisdiction over all other claims that are “so related to claims in the action.” The “other claims” join the related claims (those qualifying for original jurisdiction) as part of the civil action.
In this case, Beatriz’s claims qualified for “original jurisdiction.” On remand, it will be undisputed that Beatriz’s claims constitute “a civil action of which the district courts have original jurisdiction.” See 28 U.S.C. § 1367. Once the majority opinion concluded that the district court had “original jurisdiction” over the “civil action” consisting of Beatriz’s claims, it should have turned to § 1367’s statement that “in any civil action of which the district courts have original jurisdiction [ (Beatriz’s claims) ], the district courts shall have supplemental jurisdiction over all other [related] claims [ (Beatriz’s family’s claims) ].” Id. Instead of taking this step, the majority opinion attempts to redefine the practice of interpreting § 1332 claims to achieve a result contrary to that dictated by § 1367.[27]
*149 Further, the majority’s interpretation of § 1367(a) violates “[t]he cardinal principle of statutory construction ... to give effect, if possible, to every clause and word of a statute, ... rather than to emasculate an entire section.” United States v. Menasche, 348 U.S. 528, 538, 75 S.Ct. 513, 99 L.Ed. 615 (1955) (internal quotations and citations omitted). The majority’s interpretation of § 1367(a) eviscerates portions of § 1367(b). As the majority is forced to admit, its interpretation of § 1367 makes the Rule 19 exception in § 1367(b) “unnecessary.” What the majority does not admit is that its interpretation makes other provisions of § 1367 superfluous. See Freer, 53 Emory L.J. at 81. For example, according to the majority’s interpretation of § 1367, “original jurisdiction” would not exist over a claim made by a plaintiff against a non-diverse defendant joined under Rule 20 of the Federal Rules of Civil Procedure. The majority’s interpretation cannot be correct, however, because section 1367(b) specifically excepts supplemental jurisdiction over a claim made by a plaintiff against a non-diverse defendant joined under Rule 20. See Gibson, 261 F.3d at 936; Rosmer, 263 F.3d at 115. The only reason § 1367(b) would contain such an exception is if § 1367(a) provides jurisdiction for joined claims against non-diverse defendants. If, as the majority contends, “ ‘original jurisdiction’ under subsection (a) were determined by looking at all the claims in the complaint, there would have been no jurisdiction under § 1332 (and hence no ‘original jurisdiction’) in the first place.” Gibson, 261 F.3d at 936. Thus, the exclusion of supplemental jurisdiction of claims by non-diverse parties joined under Rule 20 would be surplusage.
IV. Congressional intent & legislative history
Recognizing that its interpretation of § 1367 results in an “imperfect” reading based on “presumptions,” the majority opinion attempts to buttress its position by referring to Congressional intent and legislative history. The majority opinion begins by noting that “Congress has long maintained a policy of restricting diversity jurisdiction.” Relying on “long maintained” policy is problematic for several reasons. First, Congressional action in the past sheds little light on what the 101st Congress believed when it passed § 1367. Rather than speculate ori what was done in the past, it is more fruitful to look at the actions of the Congress that adopted § 1367. In 1990, the same Congress that passed § 1367 was given the Report of the Federal Courts Study Committee which recommended “diversity jurisdiction should be virtually eliminated.” This recommendation was rejected by Congress. We should not achieve through judicial action what the Federal Courts Study Committee could not convince Congress to achieve. Ultimately, it is not unreasonable to believe that Congress read the plain *150 language of § 1367, recognized that it allowed diversity jurisdiction for supplemental plaintiffs, and voted for it.
Second, the continued validity of Congress’s “long maintained policy” of restricting diversity jurisdiction is called into question by Congress’s expansion of federal jurisdiction based upon minimal diversity in the Multiparty Multi-Forum Trial Jurisdiction Act in 2002. See 28 U.S.C. § 1369.
Third, and perhaps most convincing is the fact that a proposed amendment achieving the majority’s result in this case, that would limit supplemental jurisdiction in Rule 20 & 23 cases has been circulating in Congress since 1998. Freer, 53 Emory L.J. at 58-59. This amendment has done nothing more than circulate for six years. Id. Congress has reasonably rejected that view.
To conclude its opinion, the majority cites to an admittedly “muddled” legislative history for support. The legislative history, however, is so sparse and contradictory that it neither supports nor undermines the majority opinion’s conclusions. Section 1367 was passed by the House of Representatives with no floor discussion on any part of the statute. Freer, 53 Emory L.J. at 73. The Senate voted on § 1367 with little debate. Id. The bill was introduced by Senator Grassley as “noncontroversial.”
What little legislative history surrounds § 1367 is internally contradictory. For example, § 1367 “was said to be part of the ‘less controversial’ proposals of the ... Federal Courts Study Committee ... [but] that Committee never drafted a statute on supplemental jurisdiction.” Richard D. Freer, Compounding Confusion and Hampering Diversity: Life after Finley and the Supplemental Jurisdiction Statute, 40 Emory L.J. 445, 471 (1991). Further, despite the Senator’s words, and excluding the controversy surrounding supplemental jurisdiction, § 1367 was highly controversial because of its treatment of Rule 19 and its adoption of a proposal that differed substantially from the Federal Court Study Committee proposal. See Christopher M. Fairman, Abdication to Academia: The Case of the Supplemental Jurisdiction Statute, 28 U.S.C. § 1367, 19 Seton Hall Legis. J. 157, 164 (1994).
Perhaps the most relevant piece of legislative history is the fact that Congress passed § 1367 in reaction to the Supreme Court’s holding in Finley, which held that a plaintiff suing the United States in a Federal Tort Claims Act case could not join a defendant, against whom there were only state law claims, without an independent basis for federal jurisdiction. See Finley v. United States, 490 U.S. 545, 109 S.Ct. 2003, 104 L.Ed.2d 593 (1989). Had Finley not been overturned by § 1367, a plaintiff, such as the one in Finley, would have been required to either (1) split the case in two and bring the federal claim in federal court and the state claims in state court, or (2) forsake one of the two claims. To prevent such a result, Congress enacted § 1367.
The majority opinion in this case achieves a result similar to that Congress was trying to avoid by overruling Finley. As in Finley, the plaintiffs in this case must either (1) pursue Beatriz’s claims in federal court and her family’s claims in state court, (2) dispose of her family’s claims altogether, or (3) pursue all of the claims in state court. The first option leads to a waste of judicial resources and a potential for inconsistent verdicts. The second option deprives Beatriz’s family of their day in court. The third option, not present in Finley, deprives Beatriz of a *151 federal forum and of her right to a trial by jury, as her case would not receive a jury trial in the Commonwealth courts.[28] .As Congress showed by overturning Finley, being faced with these options should be avoided.
Ultimately, as the majority concedes, the legislative history is muddled and can be used to support or to contradict either position. In the end, the unclear legislative history leaves us where we started: with the text of the statute.
V. Conclusion
The majority proposes an interpretation of § 1367 that not one Congressman or drafter of § 1367 ever espoused, much less envisioned. In contrast, I support a plain reading of § 1367 that even the drafters admitted was the correct plain reading of the statute.[29] The majority proposes an interpretation of § 1367 that violates many rules of statutory construction. In contrast, I support a reading of the statute in which words are not required to have double meanings and each phrase has a purpose. Last, the majority’s interpretation leads to a waste of judicial resources and the possibility of inconsistent verdicts. In contrast, I support a reading which preserves judicial resources.
I am comforted by and conclude with a statement by the Supreme Court in Finley: “Whatever we say regarding the scope of jurisdiction conferred by a particular statute can of course be changed by Congress” or, in this case, by the Supreme Court. Finley, 490 U.S. at 556, 109 S.Ct. 2003.

. Compare Allapattah Serv., Inc. v. Exxon Corp., 333 F.3d 1248 (11th Cir.2003) (holding supplemental jurisdiction exists in a diversity class action as long as one named plaintiff satisfies the amount-in-controversy requirement); Gibson v. Chrysler Corp., 261 F.3d 927 (9th Cir.2001) (same), cert. denied, 534 U.S. 1104, 122 S.Ct. 903, 151 L.Ed.2d 872 (2002); Rosmer v. Pfizer Inc., 263 F.3d 110 (4th Cir.2001) (same), cert. dismissed, 536 U.S. 979, 123 S.Ct. 14, 153 L.Ed.2d 878 (2002); Stromberg Metal Works, Inc. v. Press Mech. Inc., 77 F.3d 928 (7th Cir.1996) (holding supplemental jurisdiction exists over a party who failed to meet the amount-in-controversy requirement); In re Abbott Labs., 51 F.3d 524 (5th Cir.1995) (holding supplemental jurisdiction exists in a diversity class action as long as one named plaintiff satisfies the amount-in-controversy requirement), with Trimble v. Asarco, Inc., 232 F.3d 946 (8th Cir.2000) (holding supplemental jurisdiction does not exist in class action diversity case); Meritcare Inc. v. St. Paul Mercury Ins. Co., 166 F.3d 214 (3d Cir.1999) (holding supplemental jurisdiction does not apply to a diversity case); Leonhardt, 160 F.3d 631 (holding supplemental jurisdiction does not exist in class action diversity case).

. See also In re Brand Name Prescription Drugs Antitrust Litigation, 123 F.3d 599, 607 (7th Cir.1997) (agreeing that § 1367 allows supplemental jurisdiction in either a class ac *146 tion or joinder situation); Rosmer, 263 F.3d at 122-29 (Motz, J., dissenting) (interpreting the majority's interpretation of § 1367 to apply to Rule 20 joinder as well as class actions).

. See also, Richard D. Freer, Toward a Principled Statutory Approach to Supplemental Jurisdiction in Diversity of Citizenship Cases, 74 Ind. L.J. 5, 21-22 (1998).

. Section 1367(a) states: "(a) Except as provided in subsections (b) and (c) or as expressly provided otherwise by Federal statute, in any civil action of which the district courts have original jurisdiction, the district courts shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution. Such supplemental jurisdiction shall include claims that involve the joinder or intervention of additional parties.”

.Section 1367(b) states: "In any civil action of which the district courts have original jurisdiction founded solely on [diversity], the district courts shall not have supplemental jurisdiction under subsection (a) over claims by plaintiffs against persons made parties under Rule 14 [third-party practice], 19 [mandatory joinder], 20 [permissive joinder], or 24 [intervention] of- the Federal Rules of Civil Procedure, or over claims by persons proposed to be joined as plaintiffs under Rule 19 of such rules, or seeking to intervene as plaintiffs under Rule 24 of such rules, when exercising supplemental jurisdiction over such *147 claims would be inconsistent with the jurisdictional requirements of section 1332.”

. Section 1367(c) states: "(c) The district courts may decline to exercise supplemental jurisdiction over a claim ... if — (1) the claim raises a novel or complex issue of State law, (2) the claim substantially predominates over the claim or claims over which the district court has original jurisdiction, (3) the district court has dismissed all claims over which it has original jurisdiction, or (4) in exceptional circumstances, there are other compelling reasons for declining jurisdiction.”

. The majority attempts to justify its approach by arguing that Congress should have *149 explicitly stated that supplemental jurisdiction exists if one claim supports original jurisdiction. First, such specificity is not required as it is undisputed that one claim can constitute a civil action.
Second, we can argue "could have” or "should have” ad infinitum. If Congress had wanted to limit supplemental jurisdiction in cases such as this, for example, it could have inserted a Rule 20 plaintiff exception into § 1367(b), as it did for other Rules of Civil Procedure. If Congress had done so, the majority would not need to resort to its dubious "sympathetic textualist” interpretation of the statute.
In a case like this, a debate over what Congress could have done is unproductive and unnecessary when a plain reading of the statute produces one clear result: a district court has jurisdiction over supplemental claims if the district court has original jurisdiction over a claim in the civil action.

. The third option is also unrealistic considering judgments in the Commonwealth courts are far below those awarded in the federal courts. See, e.g., Stewart v. Tupperware Corp., 356 F.3d 335 (1st Cir.2004).

. See Rowe Jr., Burbank, & Mengler, Compounding or Creating Confusion About Supplemental Jurisdiction? A Reply to Professor Freer, 40 Emory L.J. 943, 961 n. 91 (1991) (recognizing that the § 1367 left a "potentially gaping hole in the complete diversity requirement”).