# Applicability of the Miscellaneous Receipts Act to Personal Convenience Fees Paid to a Contractor by Attendees at Agency-Sponsored Conferences

"Personal convenience" fees that attendees at agency-sponsored conferences pay to private contractors are not subject to the Miscellaneous Receipts Act.

November 22, 2006

MEMORANDUM OPINION FOR THE GENERAL COUNSEL
DEPARTMENT OF COMMERCE

Many agencies, including within the Department of Commerce, host public conferences where agency officials can exchange ideas and information with peers outside the agency on topics relating to the agency's statutory mission. Often the agencies hire a private contractor to help plan and administer these conferences. The contractor may collect fees from conference attendees to cover its costs of providing certain goods and services to the attendees. You have asked whether these fees are subject to the Miscellaneous Receipts Act ("MRA"), 31 U.S.C. § 3302(b) (2000). We conclude that they are not.

## I.

In sponsoring a conference, you have explained, it is common for an agency to hire a contractor, paid out of appropriated funds, to manage logistics. It also has been common for agencies to authorize such a contractor (1) to provide meals, lodging, refreshments, and other goods and services to conference attendees and (2) to charge the attendees a "personal convenience" fee to cover the costs of these items. You distinguish the fees collected under such a scenario from fees that a contractor might collect for the agency, to cover the agency's costs in hosting the conference.[1] Agencies within the Department of Commerce have generally had little if any say in the amount of any fee. Sometimes, they have required the contractor to make food available to conference attendees and have retained the right to some input to ensure against lavish arrangements or excessive charges that would discourage attendance, but otherwise they have left the contractor free to deal directly with the attendees. Any fees are collected at the discretion of the contractor, not at the direction of the government.

---

[1] Whether an agency could pay the cost of personal convenience items from its appropriations is a separate question, which we do not address. As you recognize, 31 U.S.C. § 1345 forbids an agency in many cases from using an appropriation for "travel, transportation, and subsistence expenses for a meeting." *See generally Use of Appropriations to Pay Travel Expenses of International Trade Administration Fellows*, 28 Op. O.L.C. 269 (2004).

This practice was called into question by the Comptroller General's 2005 opinion in *Matter of: National Institutes of Health—Food at Government-Sponsored Conferences*, B-300,826, 2005 WL 502825 ("*NIH*"). That opinion addressed whether an agency could charge and retain a registration fee to defray the costs of meals and light refreshments at a conference that the Institutes were hosting. The Comptroller General advised that, under the MRA, the Institutes could not retain any fee. He added: "Nor could NIH authorize its contractor to charge a fee to offset costs, because, pursuant to [the MRA], a contractor receiving money for the government may not retain funds received for the government to pay for the conference costs." *Id*. at *6. The Comptroller General did not explain why, in such situations, the contractor would be "an official or agent of the Government" under the MRA in receiving payment from attendees for its services to attendees, or why those fees that the contractor received would be received "for the Government." *See* 31 U.S.C. § 3302(b). He did recognize, however, that "the participants may cover the costs of their food using their own personal funds." *NIH*, 2005 WL 502825, at *6.

The Comptroller General reiterated this position in *Contractors Collecting Fees at Agency-Hosted Conferences*, B-306,663, 2006 WL 39435 ("*Contractors*"). He stated that "when an agency lacks statutory authority to charge a fee at a conference and retain the proceeds, neither the agency hosting a conference, *nor a contractor on behalf of the agency*, may do so." *Id*. at *1 (emphasis added). You question why, if attendees may purchase meals, lodging, and refreshments "using their own personal funds," a contractor could not offer such items to the attendees and then retain the attendees' payments from their own personal funds.

## II.

We agree that a private contractor may, consistent with the MRA, retain fees it receives from conference attendees for goods and services such as meals, lodging, and refreshments that the contractor provides to the attendees. The MRA requires as follows: "[A]n official or agent of the Government receiving money for the Government from any source shall deposit the money in the Treasury as soon as practicable without deduction for any charge or claim." 31 U.S.C. § 3302(b). In the circumstances you have described, the fees are not received "for the Government" but rather collected by contractors for their own use.[2]

---

[2] Because we answer your question on this basis, we need not determine whether the contractors could be considered "agent[s] of the Government" in their receipt of the fees, or whether the government constructively "receive[s]" the fees, *see generally Effect of 31 U.S.C. § 484 on the Settlement Authority of the Attorney General*, 4B Op. O.L.C. 684, 688 (1980). On the former question, there is an argument from one of the sanctions for violating the MRA—removal "from office," 31 U.S.C. § 3302(d)—that a contractor, not holding any "office," cannot be subject to the MRA. The D.C. Circuit has employed this reasoning. *See Thomas v. Network Solutions, Inc.*, 176 F.3d 500, 511 (D.C. Cir. 1999) ("This sanction makes no sense with respect to a private actor like Network Solutions."); *cf.*

The most natural reading of the phrase "for the Government" in the MRA is that it describes something intended to be used by the government. *See* 6 *Oxford English Dictionary* 24 (Clarendon 2d ed. 1989) (defining "for" as "[i]ntroducing the intended recipient, or the thing to which something is intended to belong, or in connexion with which it is to be used"); *cf. Motor Coach Indus., Inc. v. Dole*, 725 F.2d 958, 968 (4th Cir. 1984) (affirming injunction against contracts between Federal Aviation Administration and airlines under which the FAA waived certain fees and airlines deposited money into a trust fund: "the Trust was an attempt by the FAA to divert funds from their *intended destination*—the United States Treasury") (emphasis added). This interpretation is bolstered by the MRA's statutory history and this Office's interpretation of the MRA's earlier language. In its original form, that act provided as follows:

> [T]he gross amount of all duties received from customs, from the sales of public lands, and from all miscellaneous sources, for *the use of* the United States, shall be paid by the officer or agent receiving the same into the treasury of the United States at as early a day as practicable.

Act of Mar. 3, 1849, ch. 110, § 1, 9 Stat. 398, 398 (emphasis added). The phrase "for the use of the United States" remained in the act for 133 years, until Congress in 1982 amended a large portion of title 31, as discussed below.

The reference to "use" indicated that the money must be intended for use by, or meant to cover an obligation or expense of, the United States. Thus this Office in 1978 explained that the phrase "for the use of the United States" in the MRA "has been interpreted to require that the funds in question are 'to be used in bearing the expense of the administration of the Government and paying the obligations of the United States.'" Memorandum for the Attorney General, from John M. Harmon, Assistant Attorney General, Office of Legal Counsel, *Re: Legislation Regarding FBI Undercover Operations* at 4 (July 27, 1978) ("*Undercover Operations*") (quoting *Disposition of Excess Railway Operating Income*, 33 Op. Att'y Gen. 316, 321 (1922)). We added that "funds must be available to the United States for

---

*Scheduled Airlines Traffic Offices, Inc. v. Dep't of Def.*, 87 F.3d 1356, 1361 (D.C. Cir. 1996) (referring to the MRA's "requirement that a Government official 'receiving money for the Government from any source' deposit the money in the Treasury"). On the other hand, section 3302(d) also includes forfeiture as a sanction, which might be available against a non-officer, and the D.C. Circuit's reading does not clearly give content to the term "agent," as distinct from "official." The concept of "[a]gency encompasses a wide and diverse range of relationships and circumstances," including but not limited to the relationship between "employer and employee." Restatement (Third) of Agency § 1.01 cmt. c (2006). This Office has not previously resolved the meaning of the term "agent" in the MRA. *Cf.* Memorandum for the Attorney General, from John M. Harmon, Assistant Attorney General, Office of Legal Counsel, *Re: Legislation Regarding FBI Undercover Operations* at 4, 8 (July 27, 1978) (using "agent" in the sense of FBI Special Agents and suggesting curing an MRA problem involving income received in the FBI's undercover business operations by instead "associat[ing] with a private business").

disposition on its own behalf." *Id*. And in applying the MRA, we noted that "the funds in issue are at the disposal of the United States" and that "[t]his availability . . . must mean that they were received 'for the use of the United States.'" *Id*. *See also id*. at 6 (purpose of MRA was to "require Congressional control of all funds that are available to the United States for disbursement, regardless of the source of the funds or the reason the funds were surrendered to the United States").

In 1982, in re-codifying the MRA at its present location in section 3302, Congress shortened the phrase to its current form by (among other things) deleting "the use of." Act of Sept. 13, 1982, Pub. L. No. 97-258, 96 Stat. 877, 948. But the 1982 statute itself explained that Congress's purpose was simply "[t]o revise, codify, and enact *without substantive change* certain general and permanent laws, related to money and finance." *Id*. at 877 (emphasis added). This Office repeatedly has recognized that the 1982 revision of the MRA was not intended to work any substantive changes but rather to eliminate unnecessary words. *E.g.*, *Application of 31 U.S.C. § 3302(b) to Settlement of Suit Brought by the United States*, 7 Op. O.L.C. 36, 37 n.3 (1983). This understanding also finds support in the background principle that "'it will not be inferred that Congress, in revising and consolidating the laws, intended to change their effect unless such intention is clearly expressed.'" *Finley v. United States*, 490 U.S. 545, 554 (1989) (quoting *Anderson v. Pac. Coast S.S. Co.*, 225 U.S. 187, 199 (1912)).

With this understanding of the MRA's text, it is clear that personal convenience fees, such as you have described, are not money received "for the Government." Rather, they are "for" the event planner. The fees are not used, and are not intended to be used, by or for the benefit of the host agency that hires the event planner. The host agency makes no claim to the fees; apart from the question of the MRA's applicability, the planner "is under no duty to turn over any portion to the federal government," but rather "the monies belong to" the contractor. *Thomas v. Network Solutions, Inc.*, 176 F.3d 500, 511 (D.C. Cir. 1999). The conference attendees pay the fees to the event planner so that they can obtain meals, lodging, and refreshments from the planner. The planner in turn accepts the fees to cover its costs in providing these goods and services to the attendees. The fees are not "available to the United States for disposition on its own behalf," *Undercover Operations* at 4, "at the disposal of the United States," *id*., or "surrendered to the United States," *id*. at 6.

Nor do the personal convenience fees compensate the event planner for any contractual obligation that the host agency owes to it, or enable the agency to avoid expending appropriations on "services that statutes required the agenc[y] to perform." *Thomas*, 176 F.3d at 511. In *Thomas*, the court approved retention by the private Network Solutions of fees it collected for registering internet domain names because, among other things, performing such registration was not a duty of the National Science Foundation. Similarly, the Comptroller General has recog-

nized that a "government official or agent is deemed to receive money for the government under the [MRA] *if the money is to be used to bear the expenses of the government or pay government obligations.*" *SBA's Imposition of Oversight Review Fees on PLP Lenders*, B-300,248, 2004 WL 77861, at \*7 (emphasis added). The Comptroller General concluded that the Small Business Administration ("SBA") had violated the MRA by imposing fees on lenders of SBA-guaranteed loans for reviews that the SBA was required by statute to conduct, and which the lenders paid to contractors who helped to conduct the reviews, because "the review fees paid by the lenders substitute for payment that SBA would otherwise make." *Id*. at \*9. In the two subsequent Comptroller General opinions discussed above in Part I, the Comptroller General cited this 2004 opinion in general, without discussion. *See NIH*, 2005 WL 502825, at \*6; *Contractors*, 2006 WL 39435, at \*1. Here, the host agency has no obligation, statutory or contractual, to provide meals, lodging, or refreshments to conference attendees. The fees are not "to be used in bearing the expenses of the administration of the Government and paying the obligations of the United States," *Undercover Operations* at 4 (internal quotation marks omitted), or by an agency "to offset expenses" of its operations, *id*. at 8. Thus, the personal convenience fees are not received "for the Government" and so are not subject to the MRA.

C. KEVIN MARSHALL
*Deputy Assistant Attorney General*
*Office of Legal Counsel*
